832 P.2d 203

**Jason THOMPSON and Alia Thompson, husband and wife, Plaintiffs/Appellees Cross–Appellants,**

v.

**BETTER–BILT ALUMINUM PRODUCTS COMPANY, INC., a foreign corporation, Defendant/Appellant Cross–Appellee.**

No. CV–91–0159–PR.

Supreme Court of Arizona,
In Banc.

June 18, 1992.

Charles A. Shaw, Prescott, for plaintiffs/appellees, cross-appellants.

Musgrove & Drutz, P.C. by James B. Musgrove, Mark W. Drutz, Grant K. McGregor, Prescott, for defendant/appellant, cross-appellee.

## OPINION

FELDMAN, Chief Justice.

Plaintiffs Jason and Alia Thompson petitioned this court to review a court of appeals memorandum decision. Defendant Better–Bilt Aluminum Products Company, Inc. (Better–Bilt) filed a cross-petition for review. We granted review to address the standards for recovering consequential and punitive damages in this wrongful termination case. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

## FACTS AND PROCEDURAL HISTORY

Jason Thompson (Thompson) began working at Better–Bilt's Prescott plant in April 1981. On May 3, 1985, Thompson was injured in the course of his employment and thereafter received workers' compensation benefits while recuperating. He returned to work in July 1985, but found that he had not recovered sufficiently to perform his duties and went back on workers' compensation leave.

In the fall of 1985, Thompson encountered Susie Dale (Dale), Better–Bilt's personnel assistant, at a Prescott grocery store on a Saturday afternoon. At trial, Thompson and Dale gave conflicting accounts of the date and content of their discussion. According to Thompson, he saw Dale on October 5, the date of his wife's birthday. Dale asked Thompson how he was doing and when his doctors thought he could return to work. Thomp-

son replied, "They all seem to think I probably won't be able to do that work again, but everything is up in the air right now, [they're] even talking about vocational rehabilitation."

Dale did not include a specific date in a written statement she prepared, but testified at trial that she believed the meeting occurred on September 28. She testified that she had inquired only about Thompson's health, and that he had responded:

> You know I'll probably never be able to work over there again. I am not even able to rake my yard. I can't do any physical type of work. In fact they are trying to get me into a vocational rehabilitation program. Some type of office/computer training.

Both Thompson and Dale agreed that neither of them had used the word "quit" during the conversation.

The following Monday, Dale related Thompson's comments to her supervisor, Richard Bonney, Better–Bilt's plant personnel manager. Bonney testified that he took Thompson's statement as a "voluntary termination." According to company records, Thompson was discharged as of October 1, 1985. Thompson, however, was not notified that his employment had been terminated, and, at trial, did not agree that he had submitted a voluntary termination.

While employed by Better–Bilt, Thompson was covered by a group health insurance policy purchased by Better–Bilt, which also paid most of the monthly premium for coverage for Thompson's wife and dependents. In mid-October, Thompson's wife, Alia, was hospitalized and required surgery. On November 4, 1985, Thompson went to see Dale at Better–Bilt and attempted to obtain insurance forms to file a claim for his wife's medical expenses. Dale informed him that he and his family no longer had insurance coverage because he had resigned from his employment. In addition, because he had been terminated as of October 1, the thirty-one day time period for converting his group coverage to personal coverage had expired. As a result, the Thompsons were without insurance coverage for Alia's medical expenses.

In January 1986, Thompson's attorney wrote to Better–Bilt demanding that Thompson be reinstated, but Better–Bilt did not comply with this demand. In April 1986, Thompson sued Better–Bilt, asserting a variety of claims. At trial, the court directed verdicts for Better–Bilt on Thompson's claim for intentional interference with a contractual relationship and Thompson's request for punitive damages. In addition, the court dismissed the counts alleging concealment and breach of the covenant of good faith and fair dealing.

Thompson's claims for wrongful termination and breach of the employment contract were submitted to the jury. The court gave the jury three forms of verdict: (1) for Thompson on the wrongful termination claim; (2) for Thompson on the breach of contract claim; and (3) for Better–Bilt on both claims. Reporter's Transcript (R.T.) Apr. 12, 1988, at 909–10. The jury returned a verdict for Thompson on the wrongful termination claim, awarding Thompson $5,000 in wages, $5,000 for mental anguish and emotional distress, $5,000 for medical care, and $700 for post-termination vacation and bonus pay.[1] The trial court denied Better–Bilt's motion for judgment notwithstanding the verdict or a new trial.

Better–Bilt appealed and Thompson cross-appealed. The court of appeals reversed the judgment of the trial court and remanded for retrial, holding that the trial

---

**1.** The trial judge instructed the jury that they could find for Thompson on both the wrongful termination and breach of contract claims, but that Thompson could not be awarded a double recovery. R.T. Apr. 12, 1988, at 909. It is therefore unclear whether the jury found in favor of Better–Bilt on the breach of contract claim or decided not to return a verdict on that claim so Thompson would not receive a double recovery.

This kind of confusion could be avoided by providing the jury with verdict forms that require the jury to return a verdict in favor of one party or the other on each submitted claim. In this case, for example, the jury should have been able to indicate affirmatively a finding for Thompson on one claim but for Better–Bilt on the other.

judge's jury instructions on wrongful termination were confusing and incorrectly stated the law. *Thompson v. Better–Bilt,* No. 1 CA–CV 88–436 (Ct.App. Dec. 4, 1990).[2] In a memorandum decision, the court of appeals also held, in part, that because Better–Bilt owed Alia Thompson no duty of care, the trial court had erred in permitting the jury to consider damages suffered by her.[3] The court also held that the trial court had correctly directed a verdict for Better–Bilt on the punitive damage claim.

We granted review to resolve the following issues:

1. Whether the duty of care owed by an employer to its employee to take reasonable steps to notify the employee of his discharge also extends to the members of the employee's family who are covered by an employment medical insurance policy and who might suffer damage as a result of an unknowing cessation of coverage.

2. Whether there was reasonable evidence to submit the issue of punitive damages to the jury when there is evidence that the Defendant had a deliberate policy of discharging employees on either workers' compensation leave or medical disability leave.

## DISCUSSION

### A. Alia Thompson's Medical Expenses

█ Thompson argues that Better–Bilt owed Alia a legal duty to notify her of the cessation of her medical coverage, and that its breach of that duty makes it liable for her medical expenses. Echoing the dissent in the court of appeals, Thompson argues that such a duty would not result in "wide and unreasonably attenuated liability ... because the group of potential plaintiffs is narrowly circumscribed and easily identi-

fied." Petition for Review at 10–11. Moreover, the duty would not "require the employer to send out an additional notice to the employee's family; only a single notice is required to be sent to the employee, but the liability for failure to comply with the duty extends to the family members as well." *Id.* at 11.

Better–Bilt patterns its argument on the court of appeals' reasoning, phrasing the issue as "whether BETTER–BILT owed ALIA THOMPSON a duty to notify Jason Thompson that he was terminated so he could convert insurance coverage to a personal policy." Response to Petition for Review at 8. Better–Bilt argues that "the relationship between the employer and members of the employee's family is far too attenuated to justify the imposition of such a duty." *Id.* at 9. Better–Bilt contends that the broader scope of employer liability suggested by Thompson would work a substantial hardship on employers, subjecting them to "wide-spread liability every time an employee includes a family member as a dependent or beneficiary of a company insurance policy." *Id.* at 10.

A cogent argument can be made that an employer has at least a limited duty to the spouse of an employee where, as in this case, the employee has purchased a group health insurance policy through the employer and that policy covers his spouse as an insured. Such a duty would not subject the employer to "wide and unreasonably attenuated liability" because the group of potential obligees is narrow and readily identifiable. *Thompson,* mem. dec. at 20 (dissent). Thus, the employer need do no more than it is already obligated to do because of its duty to the employee—provide reasonable notice of the cessation of coverage to the *employee,* who can then take the necessary steps to secure other coverage for the family.[4] Ultimately, how-

---

**2.** The court of appeals' ruling that the erroneous jury instruction necessitates a new trial was not raised in the petition or cross-petition for review. Consequently, this case will be remanded for a new trial.

**3.** One judge dissented on this point, arguing that the trial judge correctly permitted the jury to consider damages suffered by Alia Thompson.

**4.** We note that many employees, along with their spouses and dependent children, are now entitled to notification of the loss of medical benefits as a matter of federal law. *See* 29 U.S.C.A. §§ 1161 to 1167 (1985 & Supp.1991); *Kidder v. H & B Marine,* 932 F.2d 347, 355–57 (5th Cir.1991) (discussing scope and requirements of statute). This statute, enacted in 1986,

ever, we find it unnecessary to decide whether Better–Bilt owed Alia an independent duty because we believe that Thompson can recover Alia's medical expenses as damages for his wrongful discharge irrespective of any such independent duty.

[2] Wrongful discharge in violation of public policy gives rise to an action in tort. *See Wagenseller v. Scottsdale Memorial Hosp.*, 147 Ariz. 370, 378, 380–81, 710 P.2d 1025, 1033, 1035–36 (1985) (citing *Frampton v. Central Indiana Gas Co.*, 260 Ind. 249, 297 N.E.2d 425 (1973) (employee discharged for filing workers' compensation claim)); *see also Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 176–78, 610 P.2d 1330, 1335–36, 164 Cal.Rptr. 839, 844–45 (1980). A successful plaintiff is therefore entitled to ordinary tort damages—all damages legally caused by the tort. Restatement (Second) of Torts § 917 (1979) (hereinafter Restatement); *see Valley Nat'l Bank v. Brown*, 110 Ariz. 260, 264, 517 P.2d 1256, 1260 (1974); *see also Potter v. Village Bank of New Jersey*, 225 N.J.Super. 547, 543 A.2d 80, 87 (1988) (in wrongful termination that violates public policy, there is "no valid reason why the measure of damages should be different for other torts. Generally, compensatory damages are designed to put the injured party in as good a position as he would have been in had the tortious conduct not occurred."); *Harless v. First Nat'l Bank in Fairmont*, 162 W.Va. 116, 246 S.E.2d 270, 275 n. 5 (1978) ("the cause of action [for discharge that violates public policy] is one in tort and ... tort damages would be applica-

ble"); Daniel P. Westman, WHISTLE-BLOWING: THE LAW OF RETALIATORY DISCHARGE 115–16 (1991) ("With one exception [Wisconsin], every jurisdiction has held that tort damages are available in public policy cases."). *See generally* Annotation, *Damages Recoverable for Wrongful Discharge of At–Will Employee*, 44 A.L.R.4th 1131 (1986 & Supp.1991).

■ The analysis of whether an element of damage is legally caused by a tortious act has two prongs. Restatement § 431.[5] First, the tort must be "a substantial factor in bringing about the harm." *Id.* § 431(a); *see id.* § 433.[6] *But see Markiewicz v. Salt River Valley Water Users' Ass'n*, 118 Ariz. 329, 338 & n. 6, 576 P.2d 517, 526 & n. 6 (Ct.App.1978). Second, even if the tort is a substantial cause of the harm, the legal system may nonetheless "relieve a [tortfeasor] from liability because of the manner in which his [tortious act] produces it." *Id.* § 431(b) cmt. d. For example, the tortfeasor's "conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's [tortious] conduct, it appears to the court highly extraordinary that it should have brought about the harm." *Id.* § 435(2); *see also* W. Page Keeton et al., PROSSER AND KEETON ON THE LAW OF TORTS § 43 (5th ed. 1984).[7]

In this case, if, as the jury found, Better–Bilt wrongfully discharged Thompson, Thompson is entitled to recover damages for Alia's medical expenses. When Better–Bilt discharged Thompson without notice, his group health insurance (which included

---

was not in effect when Thompson's employment terminated, but it nevertheless suggests that the hardship of requiring notification to the employee *is not as great as Better–Bilt claims.*

5. *See* Restatement § 454 ("The rules stated in §§ 430–453. as determining the causal relation necessary to liability are as fully applicable to establish the extent of liability as to establish its existence."). The issue in this case is, of course, *the extent of Better–Bilt's liability.*

6. Section 433 of the Restatement lists the following considerations for determining whether the tortfeasor's conduct is a "substantial factor" in bringing about the harm:
  (a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it;

  (b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible;
  (c) lapse of time.
Restatement § 433.

7. Prosser and Keeton describe the extent of liability as being limited to "consequences which have some reasonably close connection with the defendant's conduct and the harm which it originally threatened, and are in themselves not so remarkable and unusual as to lead one to stop short of them." W. Page Keeton et al., PROSSER AND KEETON ON THE LAW OF TORTS § 43, at 300 (5th ed. 1984).

coverage for Alia) was also terminated. Because Better–Bilt did not give Thompson notice of termination, and arguably concealed that termination, Thompson was not afforded the opportunity to provide replacement coverage for Alia. Before Thompson found out about this discharge and loss of insurance, Alia required medical care. Thompson thus lost coverage for medical bills that would have been covered by insurance had his employment and insurance not been terminated. Under these facts, we have little difficulty concluding that Better–Bilt's tortious act was a substantial cause of Thompson's lack of coverage for Alia's medical expenses,[8] and that these damages are so closely connected to Better–Bilt's tortious conduct as to foreclose any question of liability being barred as a matter of law.[9] *See* Restatement § 433. *Cf. Markiewicz,* 118 Ariz. at 338 & n. 6, 576 P.2d at 526 & n. 6. Indeed, the analysis is no different than if the bills had been for Thompson's own medical care.[10] We therefore conclude that the court of appeals erred in holding that Thompson could not recover damages for Alia's medical expenses.

## B. Punitive Damages

At the close of Thompson's case at trial, Better–Bilt moved for a directed verdict on the claim for punitive damages. The trial judge granted the motion. The court of appeals affirmed the trial court's decision, stating that

> [a]dmittedly, it is conceivable that this set of facts could state a claim for punitive damages under *Rawlings v. Apodaca,* 151 Ariz. 149, 726 P.2d 565 (1986) and other punitive-damages cases if the defendant had a deliberate policy of discharging employees on worker's compensation leave. Nevertheless, the trial court had an obligation to weigh the evidence. *See, e.g., Farr v. Transamerica Occidental Life Ins. Co.,* 145 Ariz. 1, 699 P.2d 376 (App.1984). In our opinion, the record supports the trial court's determination here.

Mem. dec. at 18–19. We agree with the court of appeals that the record could support a conclusion that punitive damages are not recoverable. We do *not* agree, however, that this is the determinative issue. If, as the court intimates, the record could also support the opposite conclusion by clear and convincing evidence, then the issue is for the jury.

### 1. *The Standard*

▮ In appropriate circumstances, punitive damages may be recovered in an action

---

**8.** As long as the tortfeasor's "conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable." Restatement § 435. There is thus an important difference between damages for breach of contract and damages in tort:

> The limitation in actions for breach of contract that the harm must be such that the contract breaker should *reasonably foresee* at the time of making the contract to be within the risk of occurrence as a result of his breach ..., does not ordinarily apply to the extent of liability for a tort.

Restatement § 917 cmt. d (emphasis added); *see Valley Nat'l Bank,* 110 Ariz. at 264, 517 P.2d at 1260.

In this case, however, Thompson arguably could have recovered Alia's medical expenses even in an action for breach of contract. Because Better–Bilt paid the premiums—albeit reimbursed through payroll deductions—required to maintain the group health policy under which Alia was insured, it should reasonably have foreseen at the time Thompson was hired that a breach of his employment contract would leave him and his family without medical coverage.

**9.** The following hypothetical—involving a situation in which an injury, although caused by a tort, is legally much more remote—may help illustrate the point. Assume an employee declines dependent coverage through her employer and purchases health insurance for her spouse on the market. She is then wrongfully terminated, cannot afford the insurance premium, and her spouse's coverage lapses. Her spouse receives medical treatment, and she is saddled with the bills. Under this scenario, her liability for the bills can be traced to her wrongful termination as a cause, but is arguably too far removed from her employer's wrongful act to hold the employer liable for the bills.

**10.** We do not, of course, reach the question of whether Better–Bilt would be liable for Thompson's damages had they notified him of his discharge and thus afforded him an opportunity to obtain other insurance for his wife.

for wrongful discharge in violation of public policy, including discharge for filing a workers' compensation claim. *Hansen v. Harrah's,* 100 Nev. 60, 675 P.2d 394, 397 (1984).[11] We have discussed the standard for determining when an award of punitive damages is justified in several recent cases and need only summarize those holdings here.

█ To recover punitive damages, it is usually not enough for the plaintiff to show that the defendant committed a tort; the plaintiff must ordinarily show " 'something more' than the conduct necessary to establish the tort." *Rawlings v. Apodaca,* 151 Ariz. 149, 161, 726 P.2d 565, 577 (1986).[12] As we explained in *Rawlings,* an insurance bad faith case,

> [a]lthough the tort of bad faith is founded upon the defendant's intentional conduct, the intent need not be an intent to injure, harm or oppress. It is sufficient to establish the *tort* of bad faith that the defendant has acted intentionally. The jury need not even be instructed on intent.
>
> However, the species of intentional conduct necessary for recovery of tort damages in a bad faith case may fall short of what is required for a punitive damage award. In this as in other torts, both intentional and unintentional, punitive damages are only recoverable under special circumstances.

*Id.* at 161–62, 726 P.2d at 577–78 (citations and footnote omitted). Likewise, an employer can commit the tort of wrongful discharge in violation of public policy, yet act without the "evil hand ... guided by an evil mind" required for punitive damages. *Id.* at 162, 726 P.2d at 578.

To warrant the imposition of punitive damages,

[t]he wrongdoer must be consciously aware of the wrongfulness or harmfulness of his conduct and yet continue to act in the same manner in deliberate contravention to the rights of the victim. *Rawlings v. Apodaca, supra,* 151 Ariz. [at 162–63], 726 P.2d at 578–579.

\* \* \* \* \* \*

The key is the wrongdoer's intent to injure the plaintiff or his deliberate interference with the rights of others, consciously disregarding the unjustifiably substantial risk of significant harm to them. *Rawlings v. Apodaca,* 151 Ariz. [at] 161, 726 P.2d at 577. While the necessary "evil mind" may be inferred, it is still this "evil mind" in addition to outwardly aggravated, outrageous, malicious, or fraudulent conduct which is required for punitive damages.

*Linthicum v. Nationwide Ins. Co.,* 150 Ariz. 326, 330–31, 723 P.2d 675, 679–80 (1986).

█ In determining whether a defendant acted with an evil mind, courts look, in part, at "the nature of the defendant's conduct, including the reprehensibility of the conduct and the severity of the harm likely to result, as well as the harm that has occurred[,] ... [t]he duration of the misconduct, the degree of defendant's awareness of the harm or risk of harm, and any concealment of it." *Hawkins v. Allstate Ins. Co.,* 152 Ariz. 490, 497, 733 P.2d 1073, 1080 (1987). The case of *Grimshaw v. Ford Motor Co.,* 119 Cal.App.3d 757, 174 Cal.Rptr. 348 (1981), *cited with approval in Rawlings,* 151 Ariz. at 162, 726 P.2d at 578, is illustrative on this point. In *Grimshaw,* a products liability case involving the Ford Pinto, "Ford could have corrected ... at minimal cost" a design defect in the Pinto that the company knew would "expose consumers to serious injury or death."

---

11. *See also Investment Properties Mgt. v. Montes,* 821 S.W.2d 691, 696–97 (Tex.App.1991); *Smith v. Smithway Motor Xpress,* 464 N.W.2d 682, 686–87 (Iowa 1990); *Krein v. Marian Manor Nursing Home,* 415 N.W.2d 793, 795 (N.D.1987); *Meyer v. Byron Jackson, Inc.,* 161 Cal.App.3d 402, 413–16, 207 Cal.Rptr. 663, 670–72 (1984). *See generally* Annotation, *Damages Recoverable for Wrongful Discharge of At–Will Employee,* 44

A.L.R.4th 1131, 1155–59 (1986 & Supp.1991) (discussing and citing cases).

12. This requirement does not preclude the possible existence of torts whose prima facie case will necessarily satisfy the elements and evidentiary burden of a prima facie claim for punitive damages.

*Grimshaw,* 119 Cal.App.3d at 813, 174 Cal. Rptr. at 384. The record included internal memoranda showing that the company was aware of the risks to consumers, "but decided to defer correction of the shortcomings by engaging in a cost-benefit analysis balancing human lives and limbs against corporate profits." *Id.* Under such circumstances, a "jury ... could reasonably infer that defendants acted in callous disregard of plaintiffs' rights, knowing that their conduct was substantially certain to vex, annoy, and injure plaintiffs." *Id.* at 816, 174 Cal.Rptr. at 386. The court therefore upheld the jury's award of punitive damages.

In the case before us, Better–Bilt's tortious act, terminating Thompson, was certainly intentional. The question for purposes of the punitive damages issue is whether Better–Bilt acted with knowledge that it was violating Thompson's lawful rights, with the intent to injure, or with conscious disregard of Thompson's rights and the injury that might result.

### 2. *The Burden of Proof*

■ To recover punitive damages, the plaintiff must prove that defendant acted with the requisite evil mind "by clear and convincing evidence." *Linthicum,* 150 Ariz. at 332, 723 P.2d at 681. Clear and convincing evidence means "that which may persuade that 'the truth of the contention is "highly probable." ' " *In re Neville,* 147 Ariz. 106, 111, 708 P.2d 1297, 1392 (1985) (quoting *In re Weiner,* 120 Ariz. 349, 353, 586 P.2d 194, 198 (1978)); *see also* McCORMICK ON EVIDENCE § 340(b) (4th ed. 1992). The plaintiff can, of course, satisfy this burden of proof through direct evidence, *i.e.,* an admission by the defendant. Because such admissions are relatively rare, however, the plaintiff can also make its case with indirect and circumstantial evidence. As we have explained elsewhere,

> the required evil mind may be established by defendant's express statements or inferred from defendant's expressions, conduct, or objectives.... For example, defendant may have conducted himself in

an outrageous or egregiously improper manner, thus permitting the inference that he intended to injure, or consciously disregarded the substantial risk that his conduct would cause significant harm.

> Even if the defendant's conduct was not outrageous, a jury may infer evil mind if defendant deliberately continued his actions despite the inevitable or highly probable harm that would follow.... A jury certainly may infer evil mind when a defendant continues a course of conduct with knowledge of the past harm caused by that conduct.

*Gurule v. Illinois Mut. Life & Cas. Co.,* 152 Ariz. 600, 602, 734 P.2d 85, 87 (1987) (citations omitted).

### 3. *Punitive Damages and the Directed Verdict*

■ The question of whether the issue of punitive damages should go to the jury is somewhat complicated by the fact that the plaintiff must satisfy a burden of proof more onerous than a simple preponderance of the evidence. We faced an analogous question in *Dombey v. Phoenix Newspapers, Inc.,* a libel case in which the plaintiff was required to show by clear and convincing evidence that the defendant acted with actual malice, and adopted the following standard: "the appropriate summary judgment question will be whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not." 150 Ariz. 476, 486, 724 P.2d 562, 572 (1986) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255–56, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986)). We revisited *Dombey* in *Orme School v. Reeves,* noting that there are other civil contexts, including punitive damage cases, in which the plaintiff must establish one or more elements of its case by clear and convincing evidence, and that there was no reason to limit *Dombey* to first amendment cases. 166 Ariz. 301, 308, 802 P.2d 1000, 1007 (1990).[13] We continue to believe that the same standard is appropriate for punitive damage cases.

We recognize that "it is difficult for a court to determine whether a specific quan-

---

**13.** We also held that the standard for summary judgment and directed verdict is the same.

*Orme School,* 166 Ariz. at 309, 802 P.2d at 1008.

tum of evidence is 'clear and convincing' without evaluating and weighing that evidence, at least to some minimal extent." *Orme School,* 166 Ariz. at 308, 802 P.2d at 1007. Nevertheless, as with any motion for directed verdict or for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.... The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1986), *quoted with approval in Orme School,* 166 Ariz. at 309–10, 802 P.2d at 1008–09; *see also Borland v. Safeco Ins. Co. of Am.,* 147 Ariz. 195, 200, 709 P.2d 552, 557 (Ct.App.1985) ("If there is a reasonable view of the evidence that will support punitive damages the question should be left to the jury.").

■ We therefore hold that a motion for directed verdict or for summary judgment on the issue of punitive damages must be denied if a reasonable jury could find the requisite evil mind by clear and convincing evidence. Conversely, the motion should be granted if no reasonable jury could find the requisite evil mind by clear and convincing evidence. Because in granting or denying such a motion the judge is not a fact finder, the evidence and all reasonable inferences that may be drawn from the evidence should be construed in a light most favorable to the non-moving party.

Our review of the record in the instant case reveals several pieces of evidence that, when viewed in the light most favorable to Thompson, could give rise to reasonable inferences suggesting a high probability that Better–Bilt acted with an evil mind in discharging Thompson.[14] For example, a former low-level manager at Better–Bilt testified that a supervisor in-

formed him and others present at several weekly management meetings that the company was having problems with employees getting injured and filing workers' compensation claims. That supervisor told them to "write up" any instance of poor job performance by injured employees so that such employees could be dismissed. R.T. Apr. 8, 1988, at 634–39. The jury was not bound to accept allegations that he did not take the statements seriously, *see id.* at 644–45, and the jury could have inferred that Better–Bilt deliberately pursued a policy of terminating workers who filed workers' compensation claims and that the company sought pretextual reasons to justify actions it knew to be wrong.

In addition, Better–Bilt's personnel director did not contact Thompson to verify his "voluntary termination"; did not attempt to schedule him for an exit interview, which the company ordinarily conducted with departing employees as a matter of course; and did not inform him that he had been terminated until he went in a month later to pick up medical insurance forms, despite the fact that he testified he called in each Wednesday to update the company on the status of his disability. Thus, one could reasonably infer that Better–Bilt avoided informing Thompson of his nonexistent "voluntary termination" to conceal or obfuscate the true reason for his discharge. Finally, several employees testified to having been "voluntarily terminated" under more or less comparable circumstances, suggesting that Thompson's termination was not an isolated incident but was part of a pattern or practice. While any single piece of evidence, taken alone, might not be clear and convincing evidence of an "evil mind," several such pieces of evidence, taken together, might clear the evidentiary hurdle. *See Gurule,* 152 Ariz. at 602, 734 P.2d at 87.

Because of the erroneous instructions, this case is being remanded for retrial of

---

**14.** The court of appeals acknowledged as much when it wrote that "it is conceivable that this set of facts could state a claim for punitive damages under *Rawlings* ... and other punitive-damages cases if the defendant had a deliberate policy of discharging employees on worker's compensation leave." Mem. dec. at 18.

While some of the evidence might equally reasonably support alternative inferences that do not suggest an evil mind, the choice among reasonable inferences is one properly reserved for the jury.

the wrongful termination claim. *See ante* note 2. Evidence is rarely identical on retrial, and this case is unlikely to prove an exception. Therefore, we make no hard and fast ruling on the question of whether the issue of punitive damages is to go to the jury. Suffice it to say that from the entire body of evidence in the present record, resolving all issues of credibility in favor of the plaintiffs, and allowing the plaintiffs all inferences that may legitimately be drawn from the evidence, it appears that a reasonable jury could reach the following conclusions:

1. Thompson did not indicate that he was quitting or desired to be terminated.

2. Better–Bilt was aware of this fact.

3. Better–Bilt had an informal policy of terminating persons on workers' compensation or medical leave, though the rationale behind such a policy is not apparent from the record.

4. This policy was effectuated by writing up false "voluntary" terminations.

5. This policy was hidden from Better–Bilt's employees by withholding notice of termination, indicating that Better–Bilt was aware of the impropriety of its acts and the harm to its employees.

6. This policy had been applied to other employees before Thompson's termination and was pursued consciously by Better–Bilt.

If a jury were to reach these conclusions, then, under the authority cited above, the jury could conclude that Better–Bilt was pursuing a course of conduct to serve its own interests despite knowledge that its acts were wrongful and in conscious disregard for the legal rights of its employees. This would provide a sufficient basis to send the punitive damages issue to the jury. *See Gurule,* 152 Ariz. at 602, 734 P.2d at 87; *Rawlings,* 151 Ariz. at 162–63, 726 P.2d at 578–79.

15. The parties do not raise, and so we do not address, any question pertaining to the Employ-

## DISPOSITION

The case is remanded to the superior court for retrial. Should Thompson prevail on the underlying tort claims at trial, Thompson is entitled to recover damages for Alia's medical expenses and to attempt to establish a claim for punitive damages under the standard articulated above.[15] Those portions of the court of appeals' decision inconsistent with this opinion are vacated.

MOELLER, V.C.J., and CORCORAN, ZLAKET and MARTONE, JJ., concur.

ee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.A. § 1001–1461.