NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

# IN THE
# ARIZONA COURT OF APPEALS
## DIVISION ONE

JAMIE ROCHON, as a single woman, *Plaintiff/Appellant,*

*v.*

DANIEL C. GRANT, D.C., an individual, and DANIEL C. GRANT and
CASEY GRANT, as husband and wife; GRANT CHIROPRACTIC LIFE
CENTER, P.C., an Arizona professional corporation, *Defendants/Appellees.*

No. 1 CA-CV 15-0745
FILED 3-30-17

Appeal from the Superior Court in Maricopa County
No. CV2012-003681
The Honorable James T. Blomo, Judge

**REVERSED AND REMANDED**

COUNSEL

Weeks Law Office, PLLC, Phoenix
By Robert Weeks
*Counsel for Plaintiff/Appellant*

Broening, Oberg, Woods & Wilson, P.C., Phoenix
By Kevin R. Myer, James R. Broening, Megan E. Gailey
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Jon W. Thompson joined.

---

**W I N T H R O P**, Judge:

¶1          Jamie Rochon ("Rochon") appeals the trial court's order granting judgment as a matter of law on her claim for punitive damages against Daniel Grant, D.C. ("Dr. Grant").  Rochon also appeals several of the trial court's evidentiary rulings as they pertain to her claim for punitive damages.  For the following reasons, we reverse the superior court's grant of judgment as a matter of law on Rochon's punitive damages claim and remand for a new trial on the issue of punitive damages.  We also reverse the trial court's evidentiary rulings as outlined below.

## FACTS AND PROCEDURAL HISTORY

¶2          Dr. Grant has a doctor of chiropractic degree from Life University and practices as a chiropractor at Grant Chiropractic Life Center in Chandler, Arizona.  In 2006, Dr. Grant began providing chiropractic care to Rochon.  Pertinent medical history indicated that Rochon was diagnosed at childhood with scoliosis, and previously had titanium rods implanted in her spine to stabilize that condition.  At the time he began providing chiropractic care to Rochon in 2006, Dr. Grant was aware of the rods, and claims he contemporaneously documented the presence or position of the rods in his initial patient record.[1]  Dr. Grant conceded at trial that the presence of these rods is generally considered a contraindication for manipulation in that area of the spine.

¶3          On February 8, 2010, Dr. Grant performed a chiropractic adjustment on Rochon; she alleged it was in the area over the titanium rods,

---

[1]      Evidence admitted at trial brought into question whether Dr. Grant altered his initial patient record after learning that Rochon intended to sue him.  Dr. Grant testified that, although his office record for any subsequent patient encounter with Rochon did not expressly reference the presence of the rods, his computer would simultaneously display her prior spinal x-rays, which showed the presence of the rods.  We do not express any opinion concerning these credibility issues.

but Dr. Grant contended he was adjusting her shoulder. The uncontroverted evidence is that the adjustment caused Rochon to scream out in pain. After Rochon "calm[ed] down a little bit," Dr. Grant recommended Rochon return for further care in "the next day or two." Rochon returned four days later, at which point Dr. Grant took x-rays and examined her. Rochon went back to Dr. Grant for treatment two more times that month, and then never returned.

¶4 In February 2012, Rochon filed a medical malpractice complaint against Dr. Grant. Rochon alleged that Dr. Grant negligently caused her injury by performing a chiropractic adjustment over the titanium rods in her spine. Rochon further contended that the injury was caused in part by Dr. Grant's inaccurate documentation of prior office visits, which she alleged were below the chiropractic standard of care for patient record keeping.[2]

¶5 Dr. Grant denied the allegations, but, in January 2013, served an offer of judgment on Rochon. Rochon did not accept the offer of judgment, and later, with the trial court's approval, filed an amended complaint, adding a claim for punitive damages.

¶6 Before trial, Dr. Grant moved for partial summary judgment on Rochon's claims relating to the documentation practices, arguing Rochon could not prove by a reasonable degree of medical probability that her injury was caused by Dr. Grant's record-keeping practices.[3] The trial court granted the motion.

---

[2] Pursuant to Arizona Administrative Code R4-7-902(5), "[u]nprofessional or dishonorable conduct . . . means . . . [f]ailing to create an adequate patient record that includes the patient's health history, clinical impression, examination findings, diagnostic results, x-ray films if taken, x-ray reports, treatment plan, notes for each patient visit, and a billing record. The notes for each patient visit shall include the patient's name, the date of service, the chiropractic physician's findings, all services rendered, and the name or initials of the chiropractic physician who provided services to the patient."

[3] In a medical malpractice action, a plaintiff must prove negligence by showing that the health care provider fell below the standard of care and that the deviation from the standard of care was a proximate cause of the plaintiff's injury. *See* Arizona Revised Statutes ("A.R.S.") section 12-563

**¶7** Dr. Grant also moved for summary judgment on Rochon's claim for punitive damages. After hearing oral argument, the trial court denied the motion, concluding that "a reasonable juror could find by clear and convincing evidence that Dr. Grant acted with conscious disregard of a substantial risk of significant harm to Ms. Rochon by failing to document the existence of the titanium rods in his written records, thereby risking her health and safety." The court further noted there was "some evidence that Dr. Grant attempted to cover-up the existence of insufficient records by modifying them after the fact."

**¶8** In February 2014, two months after the parties' November 1, 2013 disclosure deadline, Rochon moved to add an additional trial witness. In a March 20, 2014 minute entry, the court denied the motion without elaboration.

**¶9** During a pretrial conference in April 2015, the court granted Dr. Grant's motion *in limine* to preclude Rochon from presenting information about Dr. Grant's finances until Rochon could establish a *prima facie* case for punitive damages.

**¶10** The six-day trial commenced in May 2015, and after Rochon presented her case-in-chief, Dr. Grant moved for judgment as a matter of law on Rochon's medical malpractice claim and, in the alternative, on Rochon's claims for medical expenses and punitive damages. The court denied the motion as to Rochon's medical malpractice and medical expenses claims, but granted the motion as to punitive damages, stating Rochon had "not met [her] burden on the issue of punitive damages."

**¶11** At the conclusion of trial, the jury found in Rochon's favor and awarded her $35,000 in damages. Dr. Grant then filed a statement of costs and sanctions pursuant to Rule 68, asserting that he had made an offer of judgment to Rochon for $40,000, which Rochon did not accept. Pursuant to Rule 68(g)(1)(A), the court reduced Rochon's $35,000 award by $29,682.88, and entered a final judgment against Dr. Grant in the amount of $5,317.12.

---

(2016); *Ryan v. San Francisco Peaks Trucking Co.*, 228 Ariz. 42, 48-49, ¶ 23, 262 P.3d 863, 869-70 (App. 2011).

**¶12** Rochon timely appealed, and we have jurisdiction pursuant to A.R.S § 12-2101(A)(1) (2016).[4]

## ANALYSIS

### I. *Punitive Damages*

**¶13** Rochon argues the trial court erred in granting Dr. Grant's motion for judgment as a matter of law on her claim for punitive damages. We review *de novo* the court's grant of judgment as a matter of law, and view the evidence in the light most favorable to the nonmoving party. *Hudgins v. Sw. Airlines, Co.*, 221 Ariz. 472, 486, ¶ 37, 212 P.3d 810, 824 (App. 2009).

**¶14** Punitive damages may be available where the plaintiff establishes that the defendant's "wrongful conduct was guided by evil motives." *Rawlings v. Apodaca*, 151 Ariz. 149, 162, 726 P.2d 565, 578 (1986). "[T]o obtain punitive damages, [the] plaintiff must prove that [the] defendant's evil hand was guided by an evil mind." *Id.* The evil mind that will justify the imposition of punitive damages may be found where, "although not intending to cause injury, [the] defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others." *Id.* "[A] jury may infer evil mind if [the] defendant deliberately continued his actions despite the inevitable or highly probable harm that would follow." *Gurule v. Ill. Mut. Life & Cas. Co.*, 152 Ariz. 600, 602, 734 P.2d 85, 87 (1987).

**¶15** Because punitive damages should only be awarded in the most egregious cases, *Hudgins*, 221 Ariz. at 486, ¶ 38, 212 P.3d at 824, the plaintiff making such claims must satisfy a higher burden of proof. *Thompson v. Better-Bilt Aluminum Prods. Co., Inc.*, 171 Ariz. 550, 557, 832 P.2d 203, 210 (1992). An award of punitive damages therefore requires clear and convincing evidence of the requisite evil mind. *Linthicum v. Nationwide Life Ins. Co.*, 150 Ariz. 326, 331-32, 723 P.2d 675, 680-81 (1986); *Thompson*, 171 Ariz. at 557, 832 P.2d at 210.

**¶16** Rochon argues that punitive damages are warranted here because Dr. Grant knowingly exposed her and his other patients to an unjustifiable risk of injury by failing to keep accurate patient records, and the injury risked by this misconduct occurred when, in disregard for the presence of the rods in her spine, Dr. Grant negligently adjusted over the

---

[4] Absent material revisions since the relevant dates, we cite the current version of all statutes.

rods. To support her argument, Rochon relies on *Newman v. Select Specialty Hospital-Arizona, Inc.*, 239 Ariz. 558, 374 P.3d 433 (App. 2016), in which this court reversed the superior court's grant of judgment as a matter of law on the plaintiff's punitive damages claim. In *Newman*, the plaintiff sought punitive damages against the defendant hospital based on the hospital employees' failure to follow the physician's orders and established protocol to properly care for the plaintiff's pressure sore. *Newman*, 239 Ariz. at 562, 374 P.3d at 437. The plaintiff presented evidence at trial that the hospital employees "were aware of [the plaintiff's] pressure sore and of the required courses of treatment for that wound," and that, because of the hospital's failure to timely assess and treat it, the pressure sore became much worse. *Id.* at 562-63, 374 P.3d at 437-38. This court concluded that because a reasonable jury could have found by clear and convincing evidence "that the hospital consciously disregarded a known risk of substantial harm in direct violation of [the plaintiff's] rights," the superior court erred in granting judgment as a matter of law on the issue of punitive damages. *Id.* (citing *Linthicum*, 150 Ariz. at 330, 723 P.2d at 675).

**¶17** On this record, we conclude that *Newman* is applicable here. Rochon presented evidence at trial that Dr. Grant knew or should have known of the titanium rods in her spine, and knew that performing certain types of chiropractic adjustments over her spine in that area would violate the standard of care and could cause injury. The jury heard expert testimony that such negligent conduct by Dr. Grant did, in fact, injure the patient.

**¶18** Rochon contended that the reason Dr. Grant performed this negligent adjustment was due, in part, to his failure to properly document and/or reiterate in each chart note the presence of the spinal rods. We have carefully reviewed Dr. Grant's chart. At best, Dr. Grant's patient record-keeping system appears to be inaccurate, confusing, and potentially dangerous. At worst, it increases the risk that a busy chiropractor will simply rely on a computer-generated descriptor of the patient's past and current "objective" findings and treatment that was apparently automatically repeated for each patient visit, notwithstanding the nature and findings of any actual examination of the patient for any given office visit.[5]

---

[5] Whether the automatic inclusion of this "stock" documentation was designed to create a financial benefit is not an issue on appeal, but may be an issue on remand.

¶19 Accordingly, when Dr. Grant treated Rochon, his computer screen in the examination/treatment area displayed inaccurate information about her medical history and the nature, location, and results of prior manipulations/treatments he had performed, all of which increased the risk that the patient could be injured. Additionally, Dr. Grant never attempted to review or correct Rochon's patient chart during the four years that he treated her. Finally, Rochon also presented evidence that, at a minimum, created an inference that Dr. Grant attempted to conceal the fact that his records were inaccurate and that his record-keeping system was designed, at least in part, to prioritize profits at the risk of his patients' safety. *See Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 497, 733 P.2d 1073, 1080 (1987) (stating a defendant's concealment of his misconduct is relevant to the determination of punitive damages); *Nardelli v. Metro. Grp. Prop. & Cas. Ins. Co.*, 230 Ariz. 592, 605, ¶ 62, 277 P.3d 789, 802 (App. 2012) (concluding punitive damages were warranted against a company whose actions were "driven by financial self interest").

¶20 Dr. Grant asserts that *Newman* is at least inapposite—if not wrongly decided—because it does not address the requirement that, to obtain punitive damages, the plaintiff's evidence used to suggest the defendant's state of mind must have a causal connection to the injury. Instead, Dr. Grant relies on *Saucedo ex rel. Sinaloa v. Salvation Army*, 200 Ariz. 179, 24 P.3d 1274 (App. 2001) to support his argument that punitive damages are not warranted in this case because Rochon could not establish that Dr. Grant's failure to keep accurate records was the cause of her injury.

¶21 In *Saucedo*, the defendant driver struck and killed a pedestrian and did not stop at the scene of the accident to render assistance. *Saucedo*, 200 Ariz. at 180, 24 P.3d at 1275. The court concluded that the defendant's conduct in "fail[ing] to remain at the scene was not a contributing factor or the proximate cause of [the pedestrian's] death" because the pedestrian "died on impact or within seconds thereafter." *Id.* at 183, 24 P.3d at 1278. Thus, because the "outrageous and egregious conduct" of fleeing the scene did not occur "in tandem with the conduct giving rise to the injury," the plaintiff's claim for punitive damages failed "for want of proximate cause."[6]

---

[6] Dr. Grant also cites *Forquer v. Pinal Cty.*, 22 Ariz. App. 266, 526 P.2d 1064 (App. 1974). Like *Saucedo*, *Forquer* is distinguishable from the instant case because it relates to the admissibility of the tortfeasor's conduct *after* the event-causing injury. *See Forquer*, 22 Ariz. App. at 270, 526 P.2d at 1068 (stating that after-occurring conduct not related to the state of mind of the

*Id.* at 182-83, 24 P.3d at 1277-78.  Here, however, Rochon presented evidence that Dr. Grant purposefully kept inaccurate patient records and relied on those inaccurate records before proceeding with the chiropractic adjustment that caused her injury.  Therefore, unlike *Saucedo*, where the driver's outrageous conduct occurred after the injury and caused no further harm to the pedestrian, here, Dr. Grant's inaccurate record-keeping and his reliance on those records occurred *before* the negligent adjustment that caused Rochon's injury.  On this record, a reasonable juror could conclude that Dr. Grant's failure to keep accurate records occurred "in tandem with" the adjustment that caused Rochon's injury.  *See id.* at 182, 24 P.3d at 1277.

**¶22**　　　　　Because we conclude these facts could give rise to reasonable inferences that Dr. Grant acted with an evil mind, we reverse the trial court's grant of judgment as a matter of law on Rochon's claim for punitive damages, and remand for a new trial on that issue.  *See Thompson*, 171 Ariz. at 555, 832 P.2d at 208; *see also Borland v. Safeco Ins. Co. of Am.*, 147 Ariz. 195, 200, 709 P.2d 552, 557 (App. 1985) ("If there is a reasonable view of the evidence that will support punitive damages the question should be left to the jury."). [7]

>        II.    *Evidentiary Rulings on Admissibility of Pattern of Practice, Financial Information, and Treatise*

**¶23**　　　　　Rochon also challenges several of the trial court's evidentiary rulings as they relate to her claim for punitive damages.  We review a trial court's rulings on the admission of evidence and motions *in limine* for an abuse of discretion.  *State v. Leteve*, 237 Ariz. 516, 523, ¶ 18, 354 P.3d 393, 400 (2015); *Warner v. Sw. Desert Images, LLC*, 218 Ariz. 121, 133, ¶ 33, 180 P.3d 986, 998 (App. 2008).  We review questions of law related to the admissibility of evidence *de novo*.  *Leteve*, 237 Ariz. at 523, ¶ 18, 354 P.3d at 400.

**¶24**　　　　　First, Rochon argues the trial court erred in precluding her from presenting evidence and arguing that Dr. Grant's record-keeping

tortfeasor at the time of the event itself is inadmissible on the issue of punitive damages).

[7]　　　　In her opening brief, Rochon also challenges the trial court's grant of partial summary judgment against her on her malpractice claim based on Dr. Grant's documentation practices.  However, Rochon indicates we need not address this argument if we remand the issue of punitive damages for a new trial.  Accordingly, we do not address her argument in that regard.

practices not only fell below the standard of care, but also demonstrated a pattern of reckless behavior. In light of our reversal of the trial court's judgment as a matter of law on Rochon's punitive damages claim, we conclude Dr. Grant's documentation practices are relevant to that determination. At a minimum, these practices provide a possible explanation as to how and why Rochon's injury occurred. Accordingly, we reverse the trial court's ruling precluding Rochon from presenting evidence demonstrating a pattern of practice with regard to Dr. Grant's chiropractic record-keeping practices.

¶25 Next, Rochon asserts the trial court abused its discretion in excluding evidence of Dr. Grant's financial information. Because we conclude Rochon established "the requisite prima facie showing that sufficient evidence exists to submit the question of punitive damages to the trier of fact," *Arpaio v. Figueroa*, 229 Ariz. 444, 448, ¶ 12, 276 P.3d 513, 517 (App. 2012) we reverse the trial court's ruling excluding evidence of Dr. Grant's financial information. *See Larriva v. Montiel*, 143 Ariz. 23, 24, 691 P.2d 735, 736 (App. 1984) ("It is settled in Arizona that the wealth of a defendant is relevant and subject to discovery in a proper punitive damages case."); *Hawkins*, 152 Ariz. at 497, 733 P.2d at 1080 (stating a defendant's financial position is relevant to the determination of punitive damages).

¶26 Rochon also argues the trial court abused its discretion in excluding evidence of a treatise authored by Dr. Sid Williams, the former president of Life University, entitled "The Meadowlands Experience: From the Ordinary to the Extraordinary in Chiropractic." Rochon contends the teachings in the treatise are relevant to her claim for punitive damages because "they show that [Dr. Grant] was specifically taught to ignore both business and medical ethics in order to maximize his profit."[8] Dr. Grant

---

[8]     Among the treatise's passages Rochon relies on are the following:

> What we do is organize what you know in Chiropractic into action programs that help you deliver your service to people. We organize it toward a definite, major purpose of seeing 500 visits per week. Now that 500 visits per week should gross you anywhere from $500,000 to $750,000 . . . write that down, that's a lot of bread, isn't it? That's a very small amount. . . .

argues the trial court properly excluded the treatise for lack of foundation because Rochon's counsel could not establish Dr. Grant was familiar with the treatise.[9]  But Dr. Grant acknowledged that he was familiar with the author, who was president of Life University at the time Dr. Grant attended. Putting aside the credibility issue concerning Dr. Grant's denial that he read or even knew about the book, the issue here is not whether the text is admissible because it is "a reliable authority" under Arizona Rule of Evidence 803(18)(B), but rather whether it is admissible to impeach Dr. Grant concerning his denial that his office practice and record-keeping system is designed to maximize personal profit over patient safety. Accordingly, we conclude the treatise is relevant to Rochon's claim for punitive damages, and it is for the jury to determine the proper weight to be given to it.[10]  *See State ex rel. Ordway v. Buchanan*, 154 Ariz. 159, 164, 741

---

> . . . We don't graduate professionals out here to dignify the world.  We graduate you out to make money, right?  Is that what you're in here for or are you just going to be a nice professional and go home and live in a silk cocoon all your life?

[9]      The following exchange took place between Rochon's counsel and Dr. Grant at trial:

| | |
|---|---|
| Counsel: | And Dr. Sid Williams was the founder and president of [Life University], correct? |
| Dr. Grant: | Yes, he's now passed, rest in peace. |
| Counsel: | And he was the president of the university while you attended, correct? |
| Dr. Grant: | Yes. |
| Counsel: | And are you familiar with a book that Dr. Sid Williams has written— |
| Dr. Grant: | Nope. |
| Counsel: | —about the Meadowlands experience? |
| Dr. Grant: | I don't read books. |
| Counsel: | You don't read books? |
| Dr. Grant: | No.  Just textbooks in school. |

[10]      Dr. Grant also argues Rochon waived her objection to the trial court's ruling on admissibility of the treatise because she did not raise the objection at trial.  However, because Rochon responded to Dr. Grant's motion *in limine* seeking to preclude the treatise, we conclude she has preserved the

P.2d 292, 297 (1987) (stating the jury determines the weight to be given to evidence).

### III. *Evidentiary Ruling on Late-Disclosed Witness*

**¶27** Finally, Rochon contends the trial court abused its discretion in excluding her witness, a former chiropractor, who planned to testify about his experience at Life University. "A trial court has broad discretion in ruling on disclosure and discovery matters, and this court will not disturb that ruling absent an abuse of discretion." *Marquez v. Ortega*, 231 Ariz. 437, 441, ¶ 14, 296 P.3d 100, 104 (App. 2013) (citing *Link v. Pima Cty.*, 193 Ariz. 336, 338, ¶ 3, 972 P.2d 669, 671 (App. 1998)).

**¶28** As a result of our remand, this issue is presumably moot. We assume that, in addition to setting a discovery schedule and a new trial date, the court on remand will also establish a new deadline for the disclosure of trial witnesses. As such, we further presume that counsel will comply with whatever schedule and deadlines the trial court sets.

### CONCLUSION

**¶29** The trial court's grant of judgment as a matter of law on Rochon's claim for punitive damages is reversed, and the case is remanded for further proceedings consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED:       JT

---

issue on appeal. *See State v. Lichon*, 163 Ariz. 186, 189, 786 P.2d 1037, 1040 (App. 1989) (stating a motion *in limine* will preserve an issue on appeal if "the objectionable matter is brought to the attention of the trial court in a manner sufficient to advise the trial court that the error was not waived.") (internal quotations and citation omitted); *State v. Burton*, 144 Ariz. 248, 250, 697 P.2d 331, 333 (1985) ("[W]here a motion in limine is made and ruled upon, the objection raised in that motion is preserved for appeal, despite the absence of a specific objection at trial.").