310 P.3d 1

Santiago SANCHEZ, Petitioner,

v.

The Honorable J. Richard GAMA, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,

Heydy Santizo Hernandez; David Hobbs, D.C., Real Parties in Interest.

No. 1 CA–SA 13–0072.

Court of Appeals of Arizona, Division 1, Department D.

Aug. 20, 2013.

As Amended Sept. 4, 2013.

126

The Cavanagh Law Firm By Steven D. Smith, Brett T. Donaldson, Phoenix, Attorneys for Petitioner.

Michael James Wicks, Phoenix, Attorney for David Hobbs, D.C.

Sternberg & Singer, Ltd. By Howard A. Singer and Law Office of Paul M. Briggs, PLLC by Paul M. Briggs, Phoenix, Attorneys for Heydy Santizo Hernandez.

Knapp & Roberts, P.C. By David L. Abney, for Amicus Curiae Arizona Chiropractic Society.

## OPINION

THOMPSON, Judge.

¶ 1 This special action arises from a personal injury lawsuit in which a treating physician refused to testify unless he was compensated as an expert witness. The superior court ordered Santiago Sanchez (Sanchez), the defendant below, to compensate the treating physician as an expert witness. The narrow issue we address is whether a treating physician's testimony concerning diagnosis, treatment, and prognosis is expert testimony because it draws upon his or her skill, training, and experience as a doctor. For the following reasons, we accept jurisdiction of the special action petition and grant relief.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Heydy Santizo Hernandez (Hernandez) was involved in a motor vehicle accident with Sanchez in Scottsdale, Arizona. Hernandez sued Sanchez for personal injury damages resulting from the accident, and alleged that she required chiropractic treatment from Injury Chiropractic. As part of her prima facie case, Hernandez would have to prove that she was injured, and that her treatment and

the charges were reasonable and necessary. *See* Rev. Ariz. Jury Instr. (RAJI) (Civil) Fault 3 & Personal Injury Damages 1 at 34, 108 (4th ed.2005). In his disclosure statement, Hernandez listed Injury Chiropractic as a witness to "testify consistently with their medical records regarding the injuries sustained by Plaintiff and related medical treatment." Hernandez also listed Injury Chiropractic as an expert witness, stating the "doctors will testify as Plaintiff's treating physicians, to the injuries and medical treatment and anticipated medical treatment." Treatment notes made by Dr. David Hobbs of Injury Chiropractic were attached to the disclosure statement.

■ ¶ 3 During discovery, Sanchez subpoenaed Dr. Hobbs to take his deposition. Dr. Hobbs filed a motion to quash the subpoena, or in the alternative, sought entry of a protective order limiting the scope of inquiry by defense counsel and requiring Sanchez to pay expert witness fees in advance. Dr. Hobbs sought to limit the issues to: (1) the care and treatment of Hernandez; (2) the documentation and record-keeping related to the care provided; (3) the reasonableness of the medical services provided; and (4) the philosophy and modalities of the type of chiropractic medicine engaged in by Dr. Hobbs regarding Hernandez's medical condition. On October 17, 2012, Judge Gama granted the motion and agreed that Dr. Hobbs was an expert for purposes of Arizona Rule of Civil Procedure 26(b)(4)(A) & (C).[1] Two days after Dr. Hobbs's deposition was taken, a memorandum regarding the fees to be paid to Dr. Hobbs was filed on his behalf. On January 15, 2013, the arbitrator issued a ruling determining that Dr. Hobbs was entitled to payment at the rate of $300 per hour. Sanchez then sought special action relief in this Court on March 15.

## SPECIAL ACTION JURISDICTION

■ ¶ 4 Special action jurisdiction is appropriate when a petitioner does not have an "equally plain, speedy, or adequate remedy by appeal." Ariz. R.P. Spec. Act. 1(a); *State ex rel. Romley v. Superior Court*, 172 Ariz.

109, 111, 834 P.2d 832, 834 (App.1992). Where the issue is a purely legal question of first impression, is of statewide importance, and will arise again, special action jurisdiction may be warranted. *Vo v. Superior Court*, 172 Ariz. 195, 198, 836 P.2d 408, 411 (App.1992).

¶ 5 The petition presents a purely legal question of statewide importance affecting numerous cases. The lack of guidance in this area has resulted in conflicting superior court rulings. Consequently, we exercise our discretion and accept special action jurisdiction.

## DISCUSSION

■ ¶ 6 Sanchez asserts that he should not have been required to pay expert witness compensation of Dr. Hobbs because of his specialized chiropractic knowledge, even though he would only be testifying about his examination, treatment, bills, and chiropractic opinions formed during treatment of Hernandez. It is undisputed that Dr. Hobbs was not retained for purposes of this litigation, and that his expected testimony is based on his care and services during the treatment of Hernandez, not opinions formed after Hernandez's discharge from care in anticipation of litigation. Thus, the narrow issue in this special action is whether a treating physician's testimony concerning the patient's diagnosis, treatment, and prognosis is "expert testimony" within the meaning of our rules simply because it necessarily draws upon his or her skill, training, and experience as a doctor.

¶ 7 Sanchez argues this case is governed by *State ex rel. Montgomery v. Whitten*, 228 Ariz. 17, 262 P.3d 238 (App.2011), which addressed whether a treating physician is entitled to an expert witness fee in criminal cases. *Whitten* was a first degree murder and child abuse case in which the trial court ordered that six of the treating physicians be compensated as expert witnesses if called at trial despite the state's avowal that it would only question the doctors regarding their medical treatment of the child. *Id.* at 19–20,

---

1. The arbitrator in this matter made a similar ruling on October 19, 2012. It is unclear from the record why both Judge Gama and the arbitrator made rulings.

¶¶ 2, 5, 9, 262 P.3d at 240–41. We rejected the position that physicians must be treated and compensated as expert witnesses "when any part of their testimony requires specialized knowledge obtained through professional education or work experience." *Id.* at 21, ¶ 12, 262 P.3d at 242. Instead, we laid out guidelines to aid in differentiating between expert testimony and fact testimony by treating physicians.

¶ 8 We held that "[a] fact witness typically testifies about information he or she has acquired independent of the litigation, the parties, or the attorneys." *Id.* at ¶ 14. Thus, a medical fact witness would not be required to perform additional work in order to answer questions other than reviewing his own records. *Id.* Fact-based testimony is derived from the five senses, i.e., what the treating doctor saw, heard, or felt, and typically is given in response to the "who, what, when, where, and why" questions. *Id.* at ¶ 15. Questions about experience, training, and the professional's background and specialization are "relevant to jurors in assessing the credibility of fact witnesses and in determining the weight to give their testimony." *Id.* at ¶ 13. In addition, having the doctors "educate" the jurors by explaining terms and procedures in a manner more understandable for the trier of fact does not constitute expert testimony. *Id.* at 22, ¶ 21, 262 P.3d at 243.

¶ 9 In contrast, we concluded testimony would constitute expert testimony requiring appropriate compensation if the questions required "a physician to review records or testimony of another health care provider or to opine regarding the standard of care or treatment given by another provider." *Id.* at 21, ¶ 16, 262 P.3d at 242. Hypothetical questions or questions regarding causation also may be a signal that the doctor is being asked to give expert testimony. *Id.* at 21–22, ¶¶ 17, 19–20, 262 P.3d at 242–43. We noted that the "testimony of a treating physician is, by its nature, often more relevant, material, and probative, than that of the retained expert who is not only paid for his testimony but often gleans it from a cold record." *Id.* at 22, ¶ 21, 262 P.3d at 243 (citation omitted).

¶ 10 *Whitten* is consistent with *Duquette v. Superior Court,* 161 Ariz. 269, 270, 778 P.2d 634, 635 (App.1989), a medical malpractice case addressing the issue of attorneys engaging in ex parte communication with a treating physician. Relevant to our discussion here, we stated: "A plaintiff's treating physician is not an 'expert witness' within the meaning of Rule 26(b)(4), Arizona Rules of Civil Procedure, because the facts known and opinions held by a treating physician are not 'acquired or developed in anticipation of litigation or for trial.'" *Id.* at 271 n. 2, 778 P.2d at 636 n. 2. Dr. Hobbs asserts that *Duquette* is "inapt"; if applied here, he argues, *Duquette* would render Arizona Rule of Civil Procedure 30 meaningless because the Comment to that Rule states that "[t]reating physicians are regarded as disclosed experts *for purposes of this rule.*" Ariz. R. Civ. P. 30, 1991 comm. cmt. (emphasis added). Rule 30 provides that no court order or stipulation is required in order to depose parties or expert witnesses. Ariz. R. Civ. P. 30(a). The phrase "for purposes of this rule" in the Comment refers to Rule 30 and has no impact on Arizona Rule of Civil Procedure 26(b)(4) and whether the treating physician is entitled to be paid as an expert.

¶ 11 Dr. Hobbs argues that *Whitten* is not persuasive because it involved a criminal matter requiring a civic duty, pointing out our caution that "[n]othing in this opinion, though, should be read as affecting disclosure obligations or witness compensation issues in civil cases." 228 Ariz. at 20 n. 2, ¶ 8, 262 P.3d at 241 n. 2. While a civic duty certainly attends in providing testimony in a criminal matter, civil litigants also have rights to have alleged wrongs addressed and to defend themselves. As with parties in criminal proceedings, civil litigants must have the ability to gather the facts relevant to their cases.

¶ 12 In *Whitten,* we considered and addressed the issue of treating physician compensation in the criminal context. It is not uncommon for courts to limit the application of their decisions to the issue before them, rather than trying to anticipate the myriad of possible arguments that could be developed or argued in a different application. This

does not, however, automatically indicate that the same principles may not apply or that a similar result would not be appropriate in another context. It often simply means that the court has not considered its application in another context. We, therefore, do not consider our statement in *Whitten* to suggest that treating physicians would be considered expert witnesses and entitled to compensation in the civil context. The majority of the cases cited in *Whitten* were civil cases. *See, e.g., Davoll v. Webb,* 194 F.3d 1116, 1138 (10th Cir.1999) ("A treating physician is not considered an expert witness if he or she testifies about observations based on personal knowledge, including the treatment of the party."); *Indem. Ins. Co. of N. Am. v. Am. Eurocopter L.L.C.,* 227 F.R.D. 421, 423–24 (M.D.N.C.2005) ("When the treating physician goes beyond the observations and opinions obtained by treating the individual and expresses opinions acquired or developed in anticipation of trial, then the treating physician steps into the shoes of an expert...."); *Fisher v. Ford Motor Co.,* 178 F.R.D. 195, 197 (N.D.Ohio 1998) ("Courts consistently have found that treating physicians are not expert witnesses merely by virtue of their expertise in their respective fields."); *Wreath v. United States,* 161 F.R.D. 448, 450 (D.Kan. 1995) ("[A] treating physician requested to review medical records of another health care provider in order to render opinion testimony concerning the appropriateness of the care and treatment of that provider would be specially retained notwithstanding that he also happens to be the treating physician."); *Schreiber v. Estate of Kiser,* 22 Cal.4th 31, 91 Cal.Rptr.2d 293, 989 P.2d 720, 723 (1999) ("what distinguishes the treating physician from a retained expert is not the content of the testimony, but the context in which he became familiar" with the medical information); *Donovan v. Bowling,* 706 A.2d 937, 941 (R.I.1998) (testimony by a treating physician is "entirely different from that of an expert retained solely for litigation purposes because a treating physician is like an eyewitness to an event and will be testifying primarily about the situation he or she actually encountered and observed while treating the patient").

¶ 13 In addition to these cases, many other jurisdictions have reached similar conclusions in civil cases. *See, e.g., McDermott v. FedEx Ground Sys., Inc.,* 247 F.R.D. 58, 60–61 (D.Mass.2007) (holding that the treating physician is entitled to no more than that provided under the statutory witness compensation scheme); *Mangla v. Univ. of Rochester,* 168 F.R.D. 137, 139 (W.D.N.Y.1996) (deposition questions concerning treating physicians' opinions based on their examination of a patient are a necessary part of the treatment of a patient and "do not make the treating physicians experts"); *Baker v. Taco Bell Corp.,* 163 F.R.D. 348, 349 (D.Colo.1995) (treating physician "testimony is based upon their personal knowledge of the treatment of the patient and not information acquired from outside sources for the purpose of giving an opinion in anticipation of trial"); *Clair v. Perry,* 66 So.3d 1078, 1079 n. 1 (Fla.Dist. Ct.App.2011) (citing *Frantz v. Golebiewski,* 407 So.2d 283, 285 (Fla.Dist.Ct.App.1981)) (a treating physician is not generally an expert witness because "a treating doctor ... while unquestionably an expert, does not acquire his expert knowledge for the purpose of litigation but rather simply in the course of attempting to make his patient well"); *Brandt v. Med. Def. Assocs.,* 856 S.W.2d 667, 673 (Mo.1993) ("The treating physician is first and foremost a fact witness, as opposed to an expert witness. In personal injury litigation, the treating physician is likely to be the principal fact witness on the issue of damages; in a medical malpractice case, the treating physician will often also be an important fact witness on liability. Because the treating physician uses medical training and skill both in diagnosing and treating the patient and in describing to the jury the plaintiff's condition and treatment, it is often assumed that the treating physician is automatically an expert witness. Actually, the treating physician only functions as an expert witness to the extent that one or both of the parties ask the witness to use the basic facts to draw conclusions and express opinions on relevant medical issues."); *Nesselbush v. Lockport Energy Assocs., L.P.,* 169 Misc.2d 742, 647 N.Y.S.2d 436, 437 (N.Y.Sup. Ct.1996) (citing *Sipes v. United States,* 111 F.R.D. 59, 61 (S.D.Cal.1986)) ("[I]t is improp-

er to name treating physicians as expert witnesses where the information and opinions possessed by said physicians [were] obtained by virtue of their roles as actors or viewers of the transactions or occurrences giving rise to the litigation....").

¶ 14 Not all jurisdictions have agreed with this conclusion, however, citing public policy concerns and a physician's specialized training to support the imposition of a "reasonable fee" requirement for testimony from a treating physician who is not technically an expert witness. *See, e.g., Wirtz v. Kan. Farm Bureau Servs., Inc.,* 355 F.Supp.2d 1190, 1211 (D.Kan.2005) ("[A] treating physician responding to discovery requests and testifying at trial is entitled to his or her 'reasonable fee' because such physician's testimony will necessarily involve scientific knowledge and observations that do not inform the testimony of a simple 'fact' or 'occurrence' witness."); *Mock v. Johnson,* 218 F.R.D. 680, 683 (D.Haw.2003) ("As opposed to the observations that ordinary fact witnesses provide, the observations and *opinions* that medical professionals provide derive from their highly specialized training."); *Grant v. Otis Elevator Co.,* 199 F.R.D. 673, 676 (N.D.Okla.2001) ("[T]reating physicians who testify under Fed.R.Evid. 702 as to their diagnoses, treatment and prognoses are experts within the meaning of [Fed.R.Civ.P.] 26(b)(4)(C) and are entitled to a reasonable fee."); *Coleman v. Dydula,* 190 F.R.D. 320, 323 (W.D.N.Y.1999) ("Physicians provide invaluable services to the public and should be remunerated for their time when they cannot deliver medical care." (citation omitted)). None of these cases, however, provide any logical explanation as to why physicians and no other class of professional or laborer with "specialized knowledge" should be awarded a "reasonable fee."

¶ 15 Dr. Hobbs argues that Arizona Rule of Civil Procedure 26(b)(4)(C), which does not apply to criminal cases, is the true governing law regarding this issue and distinguishes civil cases from *Whitten.* Rule 26(b)(4) provides in pertinent part:

(4) *Trial Preparation: Experts.*

(A) A party may depose any person who has been identified as an expert whose opinions may be presented at trial.

(B) A party may through interrogatories or by deposition discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances....

(C) Unless manifest injustice would result, (i) the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under subdivisions (b)(4)(A) and (b)(4)(B) of this rule; and (ii) with respect to discovery obtained under subdivision (b)(4)(B) of this rule the court shall require the party seeking discovery to pay the other party a fair portion of the fees and expenses reasonably incurred by the latter party in obtaining facts and opinions from the expert.

(D) In all cases including medical malpractice cases[,] each side shall presumptively be entitled to only one independent expert on an issue, except upon a showing of good cause....

Dr. Hobbs argues that Rule 26(b)(4) identifies and distinguishes between two types of experts—"one whose opinions may be presented at trial and one who has been retained or specially employed and who is not expected to testify at trial." He goes on to state that Rule 26(b)(4) requires reasonable payment to an expert "who is responding to the discovery request—whether it is a treating physician who is testifying under Rule 702 and Rule 703, Arizona Rules of Evidence, or an accident reconstructionist who is not expected to testify at trial." However, Rules of Evidence 702 and 703, which apply in both civil and criminal cases and which we necessarily considered in *Whitten,* deal only with witnesses testifying as experts and not as fact witnesses. Therefore, they do not direct that testifying doctors are necessarily experts; rather, they provide rules applicable to doctors who are engaged as experts.

¶ 16 Rule 26(b)(4)(A) states that "a party may depose any person who has been identified as an expert whose opinions may be presented at trial." Dr. Hobbs was not listed as an expert witness in Hernandez's disclosure statement, rather, Injury Chiropractic was identified generically both as witnesses to "testify consistently with their medical records regarding the injuries sustained by Plaintiff and related medical treatment," and as expert witnesses that "will testify as Plaintiff's treating physicians, to the injuries and medical treatment and anticipated medical treatment." To the extent that one may argue that Dr. Hobbs was listed as an expert witness, we hold that the test is not the label given by the disclosing attorney, but the substance of the disclosure under Arizona Rule of Civil Procedure 26.1. *Gomez v. Rivera Rodriguez,* 344 F.3d 103, 113 (1st Cir.2003) ("[T]he triggering mechanism for application of Rule 26's expert witness requirements is not the status of the witness, but, rather, the essence of the proffered testimony."). Here, the substance of the disclosure was the same. Hernandez listed Injury Chiropractic as treating physicians who would testify to the injuries sustained by Hernandez and her related medical treatment. Our review of Dr. Hobbs's testimony shows that it was almost entirely factual, based on information Dr. Hobbs personally observed independent of the litigation, was not given in response to hypothetical questions and did not require Dr. Hobbs to review the records of another health care provider or to opine regarding that treatment or the standard of care. *See Whitten,* 228 Ariz. at 21, ¶¶ 14, 16–17, 262 P.3d at 242.

¶ 17 Rule 26(b)(4)(B) does not apply because Dr. Hobbs was not retained or specially employed in anticipation of litigation or preparation for trial. Moreover, most of his testimony was factual in nature. Having found that neither of these usages of "expert" applies here, we similarly conclude that the mandate of Rule 26(b)(4)(C) to pay the "expert" a reasonable fee also does not apply. The Advisory Committee Notes to Federal Rule of Civil Procedure 26(b)(4) recognize as much, stating, "[an] expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of this lawsuit ... should be treated as an ordinary witness." Our holding is harmonious with the Comment to Arizona Rule of Civil Procedure 26(b)(4), which states that the purpose of the Rule is to avoid unnecessary costs and "to make the judicial system in Arizona more efficient, expeditious, and accessible to the people." Ariz. R. Civ. Proc. 26(b)(4), 1991 comm. & ct. cmts. Requiring parties to pay for the testimony of all treating physicians that are essential to the case but who only testify to the facts would increase the cost of litigation, and in some cases would limit access to the legal system to those most affluent.

¶ 18 Furthermore, we do not think it is appropriate to carve out, for doctors, an exception to the general rule that fact witnesses are not paid for giving testimony. Certainly, treating physicians provide great benefits to society and we do not wish to infringe on their ability to do their important work. However, other professions and trades also provide great benefit to society and have specialized knowledge beyond the lay juror. Courts should not create a special class of fact witnesses who are entitled to expert witness fees while excluding others. We have no basis to weigh the burdens and costs on one profession as opposed to another. We agree with the federal district court of Illinois, which stated:

> While physicians certainly have significant overhead costs and a special expertise, so do a myriad of other professions. For instance, should fact witnesses who happen to be engineers, attorneys, accountants or consultants—professions also with special expertise and significant overhead costs— similarly be allowed more than the statutory fee prescribed by § 1821? If the answer is in the affirmative, then does § 1821 merely apply to less prestigious professions? Who decides what professions fall under § 1821 versus the more lucrative "reasonable fee" under [Federal Rule of Civil Procedure] 26(b)(4)(C)? This Court declines to set precedent in this jurisdiction that, essentially, singles out physicians

for special treatment. Rather, the more prudent course of action is to follow the unambiguous tenets of [Federal Rule of Civil Procedure] 26(b)(4)(C) and § 1821, which provide that expert witnesses—*independent of their profession*—obtain compensation at a "reasonable fee", while fact witnesses—*independent of their profession*—receive compensation at the statutory fee of $40. If Congress wishes to single out certain professions for higher compensation, that is certainly its prerogative, but this Court declines to enter that arena, which is, essentially, a slippery slope.

*Demar v. United States,* 199 F.R.D. 617, 619–20 (N.D.Ill.2001); *see also McDermott,* 247 F.R.D. at 61 (there is no "logical explanation as to why [a special] . . . rule applies to physicians and no other class of professional or otherwise with 'specialized knowledge' about the testimony to be provided"); *Mangla,* 168 F.R.D. at 140 (physicians will "suffer no more inconvenience than many other citizens called forward to be deposed or testify as a trial witness in a matter in which they have first hand factual knowledge"); *cf. Irons v. Karceski,* 74 F.3d 1262, 1263–64 (D.C.Cir.1995) (holding that an attorney fact witness was not entitled to be paid his hourly billing rate and not unduly burdened by being compensated the statutory rate for an expected three day deposition); *Disability Rights Council of Greater Wash. v. Wash. Metro. Transit Auth.,* 242 F.R.D. 139, 149–50 (D.D.C.2007) (transportation consultant not compensated as expert because he was not hired in connection with the pending litigation and his information was not acquired in preparation for trial); *Leviathan, Inc. v. M/S Alaska Maru,* 86 F.R.D. 8, 9 (W.D.Wash. 1979) (holding the captain of a ship involved in a collision was "not an expert retained or specially employed by the party in preparation for trial," and therefore could not refuse to produce his report concerning the incident).

■ ¶ 19 Therefore, we hold that *Whitten* is applicable to physicians in civil litigation. Whether a treating physician is a fact or expert witness depends on the content of the physician's testimony. When a treating doctor is testifying only to the injury, medical treatment, and other first-hand knowledge not obtained for purposes of litigation, the treating doctor is a fact witness and need not be compensated as an expert. However, where expert testimony is solicited, whether the source of the expert's underlying information is from personal observation or the observations of others, but the testimony is developed for purposes of litigation, the doctors must be compensated accordingly. Often it will depend on the questions being presented to the treating physician. We lean on the discretionary powers of the trial court to determine when expert testimony is being solicited. We acknowledge that it is impossible to anticipate all scenarios and we are not attempting to do so. Our holding in no way entitles parties to abuse physicians by compelling them to give uncompensated expert testimony. The *Guidelines for Interprofessional Relationships in Legal Proceedings* was an excellent attempt at compromise, and we encourage similar efforts of cooperation and good faith in the future. *See* Joint Committee on Interprofessional Relationships et al., *Guidelines on Interprofessional Relationships in Legal Proceedings 1992/1993* (1993).

## CONCLUSION

¶ 20 Based on the foregoing, we accept special action jurisdiction, grant Sanchez relief and vacate the order compelling expert witness payment to Dr. Hobbs for his testimony relating to the care and treatment of the patient. To the extent Dr. Hobbs's deposition testimony is expert testimony, he must be compensated accordingly.

CONCURRING: JOHN C. GEMMILL, Presiding Judge and DONN KESSLER, Judge.