IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

TAMMY FELIPE, as surviving parent of ISRAEL FELIPE, individually
and on behalf of JOSE FELIPE, the statutory beneficiaries under A.R.S. §
12-612; MADELYN PEREZ, an individual; and ABEL GARCIA, an
individual, *Plaintiffs/Appellants*,

*v.*

THEME TECH CORPORATION, a Nevada corporation; GIBRAN
SANDOVAL and JESSICA SANDOVAL, husband and wife,
*Defendants/Appellees.*

No. 1 CA-CV 13-0393

FILED 08-28-2014

---

Appeal from the Superior Court in Maricopa County
No.  CV2009-014028 and CV2009-018754 (Consolidated)
The Honorable J. Richard Gama, Judge

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED**

---

COUNSEL

Fennemore Craig, P.C., Phoenix
By Julio M. Zapata, Theresa Dwyer-Federhar, Aaron T. Martin
*Counsel for Plaintiffs/Appellants*

Potts & Associates, Phoenix
By Richard G. Potts, Walter Grochowski
*Counsel for Defendant/Appellee Theme Tech Corporation*

The Doyle Firm, P.C., Phoenix
By William H. Doyle, Teresa H. Wales, D. Andrew Bell
*Counsel for Defendants/Appellees Sandoval*

―――――――――――――――――

## OPINION

Presiding Judge John C. Gemmill delivered the opinion of the Court, in which Judge Peter B. Swann and Judge Patricia A. Orozco joined.

―――――――――――――――――

**G E M M I L L**, Judge:

**¶1** Tammy Felipe, Madelyn Perez, and Abel Garcia (collectively "Plaintiffs") sued Theme Tech Corporation and Gibran and Jessica Sandoval (collectively "Defendants") for wrongful death and personal injury damages arising from an automobile accident. The jury rendered a defense verdict and judgment was entered in favor of Defendants, which Plaintiffs appeal. To resolve this appeal, we must interpret the "one independent expert" language of Arizona Rule of Civil Procedure ("Rule") 26(b)(4)(D). We conclude that the word "independent" in Rule 26(b)(4)(D) is ambiguous and we adopt the meaning of "independent" set forth in the Committee Comment to the 1991 amendment to Rule 26, which states that an "independent expert" is "a person who will offer opinion evidence who is retained for testimonial purposes and who is not a witness to the facts giving rise to the action." Applying this interpretation, we vacate the judgment and remand for further proceedings. We affirm, however, the trial court's pretrial ruling excluding the human factors expert and its grant of summary judgment on the issue of punitive damages.

## BACKGROUND

**¶2** Perez, Garcia, and Israel Felipe, son of Plaintiff Tammy Felipe, were passengers in a Chevrolet Blazer driven by Israel's brother, Joshua Felipe, that was heading north on 25th Avenue in Phoenix when a Theme Tech delivery truck, driven by Defendant Sandoval, was heading west on Adams Street. The vehicles collided in the intersection, with the front of the truck hitting the right side of the Blazer. Israel Felipe was killed in the accident and the others were injured. Plaintiffs sought general, special, and punitive damages.

¶3         Before trial, Plaintiffs disclosed their intention to present testimony from a human factors expert describing numerous ways in which cell phone usage while driving increases the likelihood of distraction. Additionally, their expert would testify that it was "more likely than not that [Sandoval] was distracted by using his cell phone at the time of the accident." Defendants filed a motion in limine to preclude Plaintiffs from presenting expert testimony of possible cell phone use. The trial court granted the motion, finding that the evidence "established . . . that [Sandoval] was not on the phone at the time of the collision." The trial court then determined that any expert testimony based on the "assumption" that Sandoval was on the phone would be "speculation" and "not relevant pursuant to [Arizona Rule of Evidence ("Evidence Rule")] 402 and . . . [unfairly] prejudicial pursuant to [Evidence Rule] 403."

¶4         Defendants also filed a pre-trial motion for partial summary judgment on the issue of punitive damages, arguing that no evidence supported a finding that Defendants "consciously" acted to create a substantial risk to others, that Defendants acted with intent to harm, or that Defendants acted with an "evil mind." The trial court agreed and granted the motion, holding that no reasonable jury could find by clear and convincing evidence that Defendants had acted in a way that would support a punitive damages award.

¶5         At trial, Plaintiffs called Officer David Garcia of the Phoenix Police Department to testify as an investigating officer and the "scene agent," whose responsibilities included "trying to determine how the collision occurred," "document[ing] all of the evidence available at the time," and "putting together an accident reconstruction." Officer Garcia's testimony included a description of the accident scene, the weather and road conditions on the day of the collision, discussion about different types of accident reconstruction methods, the method he used in his reconstruction, and the speeds of the vehicles when they collided.

¶6         During Officer Garcia's testimony, a bench conference took place in which Defendants questioned whether Plaintiffs intended to use Officer Garcia as their "liability expert." After discussion, the trial court informed the parties that Plaintiffs could question Officer Garcia about his observations, but any expert opinions or conclusions elicited from Officer Garcia would preclude separate expert testimony addressing the same issues. Plaintiffs, however, had already elicited Officer Garcia's opinions regarding speed by this point in time.

**¶7**        Several days later, when ruling on the allowable scope of testimony from Plaintiffs' retained accident reconstruction expert, the court noted that Plaintiffs had questioned Officer Garcia in a manner that "laid the foundational predicate for opinion testimony" from Garcia.  The court stated that "[t]here is no question in the Court's mind that the plaintiff[s] treated [Officer Garcia] as an expert reconstruction specialist."  Because Plaintiffs had elicited expert opinions from Officer Garcia, the court concluded that any further expert opinion testimony on the same issues would violate the limitation of Rule 26(b)(4)(D) to one independent expert per issue and result in the presentation of "impermissible cumulative expert opinions."  Specifically, the court ruled Plaintiffs could not present further expert testimony on the following issues:  speed at impact of Plaintiffs' vehicle, speed at impact of Defendants' vehicle, whether Plaintiffs' vehicle stopped at the stop sign on 25th Avenue and Adams Street before entering the intersection where the collision occurred, and whether Plaintiffs' vehicle could have obtained a certain speed from a stopped position at the stop sign to the point of impact.

**¶8**        With these limitations, Plaintiffs called their retained expert, Jeffery Wirth, to testify about his opinions formed in the course of conducting his own accident reconstruction.  Wirth testified that Sandoval had sufficient time to perceive Plaintiffs' vehicle before the collision.  Although he was precluded from expressing his own expert opinions of the vehicles' speeds, Wirth did testify that he thought Officer Garcia's opinion on the speed of Defendant's vehicle was "at the low end" of the range of speeds he believed were relevant and that he "had the [Defendants' vehicle] at a higher speed" when performing his analysis.

**¶9**        The jury returned a verdict in favor of Defendants.  Plaintiffs timely appeal, and we have jurisdiction in accordance with Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) and -2101(A)(1).

**ANALYSIS**

**I.    The Trial Court's Application of the "One Independent Expert" Rule**

**¶10**        Plaintiffs assert that the trial court erred by limiting the scope of testimony by their retained accident reconstruction expert.  A trial court has broad discretion in determining the admissibility of expert testimony, and we review those determinations under an abuse of discretion standard. *Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 505, 917 P.2d 222, 234 (1996).

A trial court's interpretation of the rules of procedure is a question of law that we review de novo. *Aztar Corp. v. U.S. Fire Ins. Co.*, 223 Ariz. 463, 479, ¶ 60, 224 P.3d 960, 976 (App. 2010).

¶11        The trial court ruled that because Plaintiffs elicited Officer Garcia's opinions derived from his accident reconstruction, Plaintiffs' retained expert could not testify to his opinions on those same factors. Plaintiffs argue that, as a matter of law, Rule 26(b)(4)(D) allows a party to retain and select one "independent expert" per issue, per side, who may offer opinion testimony. Plaintiffs assert that Officer Garcia was not and could not have been their independent expert.

## A.    Did Officer Garcia Provide Expert Testimony?

¶12        Plaintiffs first argue that Officer Garcia did not provide expert opinion testimony. According to Plaintiffs, Officer Garcia "was nothing more than an 'actor or viewer' involved in the aftermath of the accident." Plaintiffs cite an opinion of this court — addressing a different issue — that agreed with a commentary on the federal rules of civil procedure stating that an expert who is "an actor or viewer with respect to the transactions or occurrences that are part of the subject matter of [a] lawsuit . . . should be treated as an ordinary witness." *Sanchez v. Gama*, 233 Ariz. 125, 131, ¶ 17, 310 P.3d 1, 7 (App. 2013) (quoting The Advisory Committee Notes to Federal Rule of Civil Procedure 26(b)(4)).

¶13        Plaintiffs' reliance on *Sanchez* is misplaced. The issue in *Sanchez* was whether a treating chiropractor was entitled to fees as an expert witness or as a lay witness, when the doctor testified pursuant to subpoena to both facts and expert opinions. *Id.* at ¶¶ 6, 19. *Sanchez* provides no guidance on whether a fact witness may also be an expert witness for purposes of the one independent expert limitation set forth in Rule 26(b)(4)(D).

¶14        Although Officer Garcia was an "actor or viewer" in the sense that he was the Phoenix Police Department's "scene agent," his testimony extended beyond his observations at the scene and his physical investigation. Specifically, he described various accident reconstruction methods, his own reconstruction of this accident, and his opinions of the speeds of the vehicles based on his reconstruction. Accident reconstruction involves scientific and technical principles of physics, engineering, and mechanics. Officer Garcia was qualified under Evidence Rule 702 to offer opinions as an expert, and he did so. Accordingly, we reject Plaintiffs'

argument that Officer Garcia was not an expert witness, and we agree with the trial court that he provided expert testimony.

**B.     Did the Trial Court Correctly Apply Rule 26(b)(4)(D) in Precluding Part of Wirth's Testimony After Officer Garcia Testified?**

**¶15**     Plaintiffs contend that even if Officer Garcia provided expert testimony, he could not be considered their "independent expert" because Plaintiffs did not retain him to testify as an expert. The trial court therefore erred, according to Plaintiffs, in relying on Rule 26(b)(4)(D) to limit the testimony of their retained expert, Wirth, on certain subjects.

**¶16**     In relevant part, Rule 26(b)(4)(D) provides:

> In all cases including medical malpractice cases *each side shall presumptively be entitled to only one independent expert on an issue*, except upon a showing of good cause. Where there are multiple parties on a side and the parties cannot agree as to which independent expert will be called on an issue, the court shall designate the independent expert to be called or, upon the showing of good cause, may allow more than one independent expert to be called.

(Emphasis added.) Plaintiffs assert that "independent expert" is defined by the Committee Comment to the 1991 amendment to Rule 26 ("Committee Comment"), which states that an "independent expert" is "a person who will offer opinion evidence who is retained for testimonial purposes and who is not a witness to the facts giving rise to the action." Plaintiffs also point to the Committee Comment's expression of Rule 26(b)(4)'s purpose, which states in part that the rule exists to "avoid unnecessary costs inherent in the *retention* of multiple *independent* expert witnesses." (Emphasis added.) Plaintiffs essentially ask this court to incorporate the definition of "independent expert" from the Committee Comment into the rule, so that the "one independent expert" rule becomes a "one retained expert" rule.

**¶17**     The trial court's practical application of the rule was logical and the limitation on Wirth's testimony was carefully crafted by the court based on Officer Garcia's testimony. In one sense, Officer Garcia may have been more "independent" than either side's retained experts because he was not paid by one side or the other to form his opinions and testify about them. But the Committee Comment provides persuasive authority that

"one independent expert" actually means "one retained expert." The Committee Comment states in pertinent part:

> The amendment to Rule 26(b)(4) must be read in conjunction with the amendment to Rule 43(g).[1] The purpose of these two rules is to avoid unnecessary costs inherent in the *retention of multiple independent expert witnesses. The words "independent expert" in this rule refer to a person who will offer opinion evidence who is retained for testimonial purposes and who is not a witness to the facts giving rise to the action.* As used in this rule, the word "presumptively" is intended to mean that an additional expert on an issue can be used only upon a showing of good cause. Where an issue cuts across several professional disciplines, the court should be liberal in allowing expansion of the limitation upon experts established in the rule.
>
> . . . .
>
> This amendment to Rule 26(b)(4) in combination with Rule 43(g) and Rule 16(c)(3) is intended to *discourage the unnecessary retention of multiple independent expert witnesses* and the discovery costs associated with listing multiple cumulative independent experts as witnesses. . . .

(Emphasis added.)

¶18　　　　Our appellate courts have not provided particularly clear guidance on the meaning of "independent expert." Two opinions of this court have accepted the Committee Comment's definition of "independent expert," although neither focused directly on whether an expert was "independent" because the expert was "retained." *See In re Frankovitch*, 211 Ariz. 370, 373-74, ¶¶ 9-12, 121 P.3d 1240, 1243-44 (App. 2005) (holding that an expert presenting opinions formed as a result of statutory duties was more akin to a fact witness than an expert witness); *Ariz. Dep't of Revenue v. Superior Court*, 189 Ariz. 49, 52-53, 938 P.2d 98, 101-02 (App. 1997) (holding that an expert who is an employee of a party is not "independent"). Our

---

1　Before its abrogation in 2000, Rule 43(g) required that "[t]he Court shall not permit opinion evidence on the same issue from more than one *independent* witness per side, except upon a showing of good cause." (Emphasis added.)

supreme court has not directly analyzed the meaning of "independent expert," although it has stated that published comments to rules of procedure may clarify an ambiguous rule. *See State v. Aguilar*, 209 Ariz. 40, 48, ¶ 26, 97 P.3d 865, 873 (2004) ("a comment may clarify a rule's ambiguous language" but "cannot otherwise alter the clear text of a rule"). The supreme court has also relied on committee comments to assist it in interpreting procedural rules. *See, e.g., State v. Salazar-Mercado*, 234 Ariz. 590, 592-93, ¶ 7-10, 325 P.3d 996, 998-99 (2014).

**¶19** With the issue now squarely before us, we conclude that the meaning of "independent expert" is ambiguous as used in Rule 26(b)(4)(D). The phrase "independent expert" could include, as the trial court decided, a witness such as Officer Garcia; or the phrase could mean a retained expert who is independent of any party prior to retention. Although no direct authority requires us to adopt the Committee Comment's definition of "independent expert," we view this court's and the supreme court's previous willingness to rely on Committee Comments as sufficiently persuasive to adopt the Committee Comment's definition of "independent expert."[2] Therefore, we hold that an "independent expert" is a person who is retained for the purpose of offering expert opinion testimony. Because Officer Garcia was not retained by Plaintiffs, he was not Plaintiffs' independent, retained expert on the speeds of the vehicles. By precluding Wirth from testifying about the vehicles' respective speeds, the trial court erred in its application of Rule 26(b)(4)(D).

**¶20** Defendants contend that irrespective of how we interpret Rule 26(b)(4)(D), expert testimony still may be excluded if it is cumulative of other evidence. And Defendants assert that such a discretionary exclusion is exactly what the trial court did here. We conclude otherwise.

**¶21** A trial court certainly has the discretion to prevent the presentation of "cumulative evidence." *See* Ariz. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . needlessly presenting cumulative

---

[2] The Committee Comment we rely on here was submitted by the "Special Bar Committee to Study Civil Litigation Abuse, Cost and Delay," which was appointed by the supreme court in 1990. The Committee's proposed rule changes were adopted by the supreme court in 1991, with the Committee's and Court's comments included. *See* Court Comment to 1991 Amendment, Ariz. R. Civ. P. 26.1(a); Court Comment to 1991 Amendment, Ariz. R. Civ. P. 26(b).

evidence"). This discretion is recognized both by the Committee Comment and Arizona case law as a distinct purpose of Rule 26(b)(4)(D). *See Sanchez v. Old Pueblo Anesthesia, P.C.*, 218 Ariz. 317, 322, ¶ 18, 183 P.3d 1285, 1290 (App. 2008) (recognizing the rule is intended to limit the presentation of cumulative evidence); *cf. Felder v. Physiotherapy Assocs.*, 215 Ariz. 154, 167-68, ¶ 65-70, 158 P.3d 877, 890-91 (App. 2007) (discussing Rule 26(b)(4)(D) in the context of whether expert opinion was "duplicative").

**¶22**      Arizona case law has defined "cumulative evidence" as evidence that "augments or tends to establish a point already proved by other evidence." *State v. Kennedy*, 122 Ariz. 22, 26, 592 P.2d 1288, 1292 (App. 1979) (citing *State v. Turner*, 92 Ariz. 214, 220-21, 375 P.2d 567, 571 (1962)); *State v. Allen*, 157 Ariz. 165, 177, 755 P.2d 1153, 1165 (1988). Similarly, Black's Law Dictionary defines "cumulative evidence" as "[a]dditional evidence of the same character as existing evidence and that supports a fact established by the existing evidence (esp. that which does not need further support)." Black's Law Dictionary 577 (7th ed. 1999).

**¶23**      As applied here, Wirth's opinions would not be cumulative of Officer Garcia's opinions unless Officer Garcia's opinions were "established" and Wirth's were substantially the same. The record reflects, however, that Wirth's speed opinions differed from Officer Garcia's. Wirth testified at trial that he had a different opinion about the speed of Defendants' vehicle and, according to a pre-trial deposition, Wirth used different reconstruction methodologies than Officer Garcia, resulting in his different opinions on the vehicles' speeds. Specifically, Officer Garcia testified that Defendants' truck was traveling at 33 miles per hour, but Wirth concluded that the truck was traveling 37 to 42 miles per hour. The speed limit on Adams for Defendants' truck was 35 miles per hour. Additionally, Officer Garcia concluded that the Plaintiffs' vehicle was traveling at 18 miles per hour at the point of impact, but Wirth testified in deposition that this vehicle was traveling at 15 to 18 miles per hour. In the context of this case, these differences in opinion about speed were not trivial. Although we recognize that allowing Wirth's opinions on the speeds of the vehicles would result in more than one expert opinion on these issues, Wirth's opinions were not the same as Officer Garcia's, and therefore they were not "cumulative evidence" as defined in *Kennedy*.

**¶24**      To summarize, in light of our interpretation of Rule 26(b)(4)(D), the trial court erred in limiting Wirth's expert opinions. We also reject Defendants' reading of the record that the trial court limited Wirth's opinions on the entirely independent basis of the court's

discretionary authority to limit needless cumulative evidence. Wirth's speed and reconstruction opinions were meaningfully different from Officer Garcia's and therefore not cumulative. Plaintiffs were entitled under Rule 26(b)(4)(D) to present their retained expert's opinions regarding the speeds of the vehicles and related conclusions from his reconstruction of the accident. The trial court's error was prejudicial to Plaintiffs in their effort to prove negligence, and they are therefore entitled to a new trial.

¶25 Although remand is necessary, there are two more issues that are appropriate for this court to resolve.

## II. Human Factors Expert Motion in Limine

¶26 Plaintiffs argue the trial court abused its discretion by precluding expert testimony on Sandoval's alleged cell phone use and the potential effects of such use. We review a trial court's evidentiary rulings for an abuse of discretion. *Higgins v. Assmann Electronics, Inc.*, 217 Ariz. 289, 298, ¶ 35, 173 P.3d 453, 462 (App. 2007).

¶27 Plaintiffs contend the trial court erred in finding that no foundation existed for expert testimony on the effects of cell phone usage while driving, pointing to "multiple forms of evidence" that Sandoval was possibly using a cell phone at the time of collision. As recited by Plaintiffs, this evidence includes: (1) an alleged change in story by Sandoval regarding whether he saw Plaintiffs' vehicle before the collision; (2) Sandoval's failure to provide "any reason as to why he failed to slow down, brake, or take any other evasive action prior to the [collision];" (3) eyewitness evidence that Sandoval "was on his cell phone immediately after the accident;" and (4) cell phone records from Sandoval's cell phone company and 911 call records from the Phoenix Police Department, indicating that a short period of possible overlap existed between the time Sandoval initiated a call to his father and the time an eyewitness called 911. Plaintiffs rely on *State v. Plew*, 155 Ariz. 44, 745 P.2d 102 (1987), to argue that, even without "conclusive evidence," there was enough evidence in the record for a jury to believe that Sandoval was using a cell phone at the time of the collision with Plaintiffs.

¶28 The first three items of evidence proffered by Plaintiffs are too speculative to show that Sandoval was using a cell phone at the time of the collision. Regarding the cell phone and police department records, we agree that *Plew*'s guidance is relevant. In *Plew*, our supreme court held that in reviewing preliminary questions under Evidence Rule 104, a trial court

is "'limited to asking whether evidence in the record . . . would permit a reasonable person to believe' the evidence on the preliminary questions." *Id.* at 50, 745 P.2d at 108 (quoting *State v. LaGrand*, 153 Ariz. 21, 28, 734 P.2d 563, 570 (1987)). Under Evidence Rule 104(b), "[w]hen the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist." Our determination therefore rests on whether the cell phone and 911 records are sufficient to find that Sandoval was using a cell phone at the time of the collision.

¶29 The cell phone records show that one phone call, lasting 13 minutes, was made from Sandoval's cell phone around the time of the collision. The records also indicate that no calls were received around that time, nor were text message or voicemail features used. Sandoval testified in deposition and at trial that he placed the phone call after the collision, and an eyewitness likewise testified that she saw Sandoval get on the phone after the collision. Sandoval's father testified that Sandoval called him and told him he had been in an accident. No witnesses testified that Sandoval was using a cell phone at or before the time of the collision. According to the Phoenix Police Department records, the 911 call reporting the collision was received between 5:02:30 p.m. and 5:03:29 p.m. Sandoval's cell phone records indicated that the call placed from his cell phone began between 5:03:00 p.m. and 5:03:59 p.m. From this evidence, Plaintiffs assert a "material and disputed fact issue" existed that the jury should have been allowed to resolve.

¶30 A review of the "time stamps" for Sandoval's call and the 911 call reveals that, for Sandoval to have been on the phone at the time of the accident, he would have had to begin his phone call at or seconds after 5:03:00 p.m., before the accident occurred; the accident must have then happened and Sandoval remained on the phone as he got out of the truck; and then the witness called 911 before 5:03:29 p.m. On this record, Plaintiffs' proffered interpretation of the evidence is neither reasonably possible nor persuasive. The trial court did not abuse its discretion in concluding that allowing Plaintiffs' human factors expert to testify about cell phone usage would, on this record, sanction speculation and violate either Evidence Rule 402, 403, or both. Accordingly, the trial court did not err in excluding the human factors expert.

## III. Punitive Damages

¶31 Plaintiffs assert that the trial court erred in granting summary judgment on their claim for punitive damages. We review a grant of

summary judgment de novo, "viewing the evidence and reasonable inferences in the light most favorable to the party opposing the motion." *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12, 69 P.3d 7, 11 (2003).

**¶32**　　　Punitive damages may be appropriate when evidence shows that a defendant consciously and deliberately "acted with an evil mind" and such action caused tortious harm as a result. *See Thompson v. Better-Bilt Aluminum Products Co., Inc.*, 171 Ariz. 550, 556, 832 P.2d 203, 209 (1992); *Rawlings v. Apodaca*, 151 Ariz. 149, 162-63, 726 P.2d 565, 578-79 (1986); *Linthicum v. Nationwide Ins. Co.*, 150 Ariz. 326, 330-31, 723 P.2d 675, 679-80 (1986). A motion for summary judgment on a punitive damages claim must be denied "if a reasonable jury could find the requisite evil mind by clear and convincing evidence." *Thompson*, 171 Ariz. at 558, 832 P.2d at 211.

**¶33**　　　Plaintiffs' punitive damages claim is based primarily on the allegation that Sandoval was using a cell phone at the time of the accident. Based on this record, including our affirming of the trial court's exclusion of testimony from the human factors expert, Plaintiffs cannot show that Defendants acted with the requisite evil mind to justify an award of punitive damages. The trial court did not err by granting summary judgment on this issue.

## CONCLUSION

**¶34**　　　Because the trial court erred in its application of the one independent expert limitation under Rule 26(b)(4)(D), we vacate the judgment and remand for further proceedings. We affirm the trial court's preclusion of testimony from a human factors expert on the issue of alleged cell phone usage by Sandoval preceding the collision. We also affirm summary judgment for Defendants on the issue of punitive damages. We need not reach any additional issues or arguments raised by Plaintiffs on appeal. Plaintiffs may recover their taxable costs incurred on appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21.



Ruth A. Willingham · Clerk of the Court
F I L E D : gsh