NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In the Marriage of:

ROBERT F. MORAN, *Petitioner/Appellee,*

*v.*

KEELY E. MORAN, *Respondent/Appellant.*

No. 1 CA-CV 16-0686 FC
FILED 11-14-2017

Appeal from the Superior Court in Maricopa County
No. FC2009-005525
The Honorable Carolyn K. Passamonte, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

The Cavanagh Law Firm, P.A., Phoenix
By Helen R. Davis, Karen C. Stafford
*Counsel for Petitioner/Appellee*

Dickinson Wright PLLC, Phoenix
By Steven D. Wolfson, Scott A. Holcomb
*Counsel for Respondent/Appellant*

## MEMORANDUM DECISION

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Diane M. Johnsen and Judge Maria Elena Cruz joined.

**W I N T H R O P**, Presiding Judge:

¶1 Keely E. Moran ("Mother") appeals the family court's post-decree orders adopting the report of a Family Law Master ("the Master") that deleted a provision ("Recommendation B") within a prior report that allowed a week of parenting time to be reallocated if the schedule resulted in three consecutive weeks of parenting time to either Mother or Robert F. Moran ("Father"). Mother argues the prior report became a binding order of the court pursuant to Arizona Rule of Family Law Procedure ("Rule") 72(G), and the Master exceeded her authority by deleting Recommendation B. In Mother's view, deletion of Recommendation B constituted an amendment of an existing order in violation of Rule 85, and the family court failed to make necessary findings and an independent determination in overruling Mother's objection to the deletion. She argues the court's adoption of the Master's recommendation to delete Recommendation B was an impermissible abdication of the court's authority under *Nold v. Nold*, 232 Ariz. 270 (App. 2013). For the following reasons, we disagree and affirm.

### FACTS AND PROCEDURAL HISTORY[1]

¶2 The parties were married in 1995 and have one minor child ("the child") in common. Father petitioned for dissolution of the parties' marriage in August 2009. On May 4, 2011, the parties stipulated to the

---

[1] We view the facts and reasonable inferences in the light most favorable to sustaining the family court's orders. *See Mitchell v. Mitchell*, 152 Ariz. 317, 323 (1987); *Thomas v. Thomas*, 142 Ariz. 386, 390 (App. 1984).

appointment of Annette T. Burns as the Master,[2] pursuant to Rule 72.[3]  On July 3, 2012, the family court entered a consent decree of dissolution of the parties' marriage.[4]  Pursuant to agreement of the parties, the court reappointed Burns as the Master following entry of the decree.

**¶3**　　　　In November 2013, Father filed a petition to, *inter alia*, modify parenting time.  The parties eventually resolved that proceeding through a stipulated order entered October 6, 2015.  The stipulated order incorporated a "First Amended Joint Legal Decision-Making Agreement and Parenting Plan" ("the Amended Plan"), which provided in part as follows:

> The Parents will meet with the Parenting Coordinator to finalize and update the parenting time calendar for the following year.  Because the school calendar is not released until early to mid-February, beginning in 2016 and after, the Parents will meet with the Parenting Coordinator by March 1 each year.  However, for the year 2015, the Parents will meet with the Special Master on October 28, 2015 for the calendar meeting (and then again before March 1, 2016 when they have the 2016-2017 school calendar), which has been scheduled with the Special Master because no Parenting Coordinator is in place at this time.  The actual meeting dates will be scheduled based on the schedules of the Parenting

---

[2]　　　　The order provided in part that the Master "may deal with any issues, pursuant to Title 25, A.R.S., that could be presented to the assigned Judge including without limit pre-decree motions, petitions, requests for costs and attorney's fees or for injunctive relief and any post-decree matters."

[3]　　　　A Parenting Coordinator, Judith Wolf, was also appointed in December 2011.  Wolf was reappointed in January 2013, and again in February 2014, over Mother's objection.  Wolf's second reappointment as Parenting Coordinator expired in early 2015, and Mother again objected to Wolf's reappointment.  Accordingly, by the fall of 2015, no Parenting Coordinator was in place.  As of January 1, 2016, the Arizona Rules of Family Law Procedure were revised, such that appointment or reappointment of a Parenting Coordinator now can be made only by stipulation of the parties.  *See* Ariz. R. Fam. Law P. 74(B), (Q).

[4]　　　　Attached as Exhibit A to the consent decree was a comprehensive "Joint Custody Agreement and Parenting Plan."

Coordinator or Special Master, if applicable, and the Parents. If no Parenting Coordinator is in place, the Parents will meet with the Special Master to conduct the calendar meeting (without lawyers if at all possible).

¶4 In compliance with the Amended Plan, the parties met with the Master on October 28, 2015, for the expressed "purposes of finalizing, to the extent possible, their parenting time calendar for the remainder of 2015 and for the first few months of 2016."[5] The Master then filed her "Family Law Master's Report Dated October 29, 2015 Re Calendar Issues" ("the October 2015 Report"). The October 2015 Report made four recommendations, including the recommendation at issue in this appeal, Recommendation B, which provided as follows:

> Should a break, holiday or vacation period cause a parent to have [the child] for three weeks in a row, then if at all possible, the last of those three weeks will be swapped, so that each parent has [the child] for two weeks in a row rather than one parent having her for three weeks in a row. Those swaps, when reasonably possible, have already been accommodated in the attached calendars.[6]

Although the October 2015 Report was mailed to counsel for each party, the report did not advise the parties of an objection period or that the court

---

[5] Under the current version of Rule 72 adopted and effective January 1, 2017, "[a]n appointment under this rule may not direct a master to perform services within the scope of Rule 74 [the Parenting Coordinator] or otherwise make decisions or recommendations concerning legal decision-making or parenting time." Ariz. R. Fam. Law P. 72(B). However, "[a]ll family law master appointments made prior to January 1, 2017, continue to be governed by the prior version of Rule 72." Ariz. R. Fam. Law P. 72(M).

[6] The attached calendars specified each day that each parent was to have the child through late May 2016, and tentatively indicated that, for 2016, Father would have the child from May 26 through June 23, at which time a "Mother-Summer" period would begin.

might adopt the report as an order. The family court did not formally adopt the report as an order of the court.[7]

¶5         On May 12, 2016, the parties again met with the Master, this time to complete the parenting time calendar for August 2016 through August 2017. The Master then issued her "Family Law Master's Report Dated May 31, 2016" ("the May 2016 Report"), which included the following finding, supporting a recommendation that Recommendation B in the October 2015 Report be deleted:

> A recommendation in the [October 2015 Report] is inconsistent with the remainder of the recommendations and needs to be deleted. Specifically, that recommendation states that if a break, holiday or vacation causes a parent to have [the child] for more than three weeks in a row, then if possible, a week should be swapped so that each parent has her two weeks in a row rather than one parent having her for three weeks. Mother objects to this provision being deleted, but does not want this provision applied to the summer months when she has [the child] for more than six (6) weeks in a row. This provision simply does not make sense in light of the way the parents have divided [the child's] break time. As Mother has the majority (60%) of the summer break days, and they are exercised consecutively so that [the child] and Mother can travel to Spain, Father is then awarded certain break time with [the child] during the school year to make up for having lesser time in the summer. It makes no sense to swap only weeks during the school year (which would greatly complicate an already complicated calendar), which would affect Father's parenting time with [the child] but not Mother's.[8]

---

[7]      On December 30, 2105, the Master filed a supplement to the October 2105 Report, giving Mother, at Father's request, three days and three overnight periods originally allocated to Father. Again, the parties were not notified of an objection period or that the court might adopt the report as an order. The family court did not formally adopt the supplement as an order of the court.

[8]      The parties dispute whether the Master erred in finding that Recommendation B is "inconsistent" with the parties' summer parenting-

The family court adopted the May 2016 Report as a temporary order of the court, to become final unless either party filed a written objection by June 27, 2016.

**¶6**            Mother timely objected to the May 2016 Report based, in part, on the deletion of Recommendation B.  The family court summarily denied Mother's objection before Father's time to respond had run, and an order denying the objection was filed July 14, 2016.  Mother then moved to modify the court's July 14 order, arguing the court should reverse the deletion of Recommendation B.  The court again summarily denied Mother's motion before Father's time to respond had run.

**¶7**            Mother timely appealed the family court's formal orders.  We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(2), (4) (2016).

**ANALYSIS**

*I.        Standard of Review*

**¶8**            In general, we review the family court's orders on parenting time for an abuse of discretion.  *Nold*, 232 Ariz. at 273, ¶ 11.  A court abuses its discretion when it commits an error of law in reaching a discretionary decision, reaches a conclusion without considering the evidence, commits another substantial error of law, or makes a finding lacking substantial evidentiary support.  *Flying Diamond Airpark, L.L.C. v. Meienberg*, 215 Ariz. 44, 50, ¶ 27 (App. 2007).  We review *de novo* legal questions, such as the interpretation of statutes and procedural rules.  *See Melgar v. Campo*, 215 Ariz. 605, 606, ¶ 6 (App. 2007); *Felipe v. Theme Tech Corp.*, 235 Ariz. 520, 524, ¶ 10 (App. 2014).  Furthermore, under Rule 72(H), "[a]t the time the master is appointed, the parties may stipulate that a master's findings of fact shall be final.  When so stipulated, the court shall consider only questions of law arising from the master's report.  Absent such a stipulation, the court shall

time schedule.  We agree with Father that, under the plain language of Recommendation B, that recommendation as written would apply to both the school year and the summer period.  *See supra* ¶ 4 ("Should a break, holiday *or vacation period* cause a parent to have [the child] for three weeks in a row . . . ." (emphasis added)).  Accordingly, the Master correctly found that Recommendation B was inconsistent with the tentative calendar for the 2016 summer parenting-time schedule.  It was also inconsistent with section 6 of the Amended Plan.

not reverse the special master's findings of fact unless clearly erroneous and shall review conclusions of law *de novo*."

> II.    *The Merits*

**¶9**        Relying on Rule 72(G), Mother argues that the October 2015 Report, along with its Recommendation B, automatically became an order of the family court after the time for the parties to object had passed.[9] Father counters that, because the court never issued an order formally adopting the October 2015 Report, when the Master later recommended deletion of Recommendation B in the May 2016 Report, the Master did no more than recommend deletion of a term that was never a court order in the first place.

**¶10**        The applicable portion of the version of Rule 72(G) in effect at the time provided as follows:

> If no objection [to a Family Law Master's report] is filed by either party pursuant to this rule, the master's report shall become an order of the court, unless the court on its own motion sets a hearing upon a particular issue in the report within ten (10) days after the time for filing an objection has passed. If the master's report covers all issues in the case, and no objection is filed and the court does not set a hearing, the court shall enter judgment on the master's report.[10]

**¶11**        Even assuming without deciding that Mother is correct that Rule 72 is "self-executing," however, Mother cites no persuasive authority that prevented the court from overruling her objection to the Master's May 2016 Report.[11] The October 2015 Report was generated to create temporary orders and was specifically designed to address calendaring issues arising

---

[9]        Under Rule 72(F), Ariz. R. Fam. Law P., "[a] party may object to the master's report . . . no later than fifteen (15) days from the date of mailing of the master's report."

[10]        The second sentence has been eliminated from the current version of Rule 72(G), effective January 1, 2017.

[11]        Mother's citation to Rules 85 and 91, Ariz. R. Fam. Law P., is unhelpful, as those rules are inapplicable in this context. Further, *Nold* is distinguishable because it regards a physical custody decision, not simply a scheduling issue that might lead to minor calendaring changes. *See* 232 Ariz. at 273, ¶ 11.

from November 2015 through "the first few months of 2016." The May 2016 Report recommended the elimination of Recommendation B going forward, and the court advised the parties of its approval and adoption of the recommendations in that report as a temporary order of the court, subject to timely objection by either party. Mother timely objected, and the court then followed the directive of Rule 72(G), which provides the following options:

> In the event any objection(s) are filed, the court may set oral argument on the objection(s), adopt the report, modify it, reject it in whole or in part or may receive further evidence. The court shall hold a hearing or enter an order in connection with any objection to the master's report within thirty (30) days of the filing of the response or other ordered pleading to such objection.

¶12        Thus, under the plain language of Rule 72(G), the family court retained discretion to set oral argument, adopt the report, modify the report, or reject the report in whole or in part. Further, the rule required the court, within thirty days of Mother's objection, to either issue an order or hold an evidentiary hearing. Here, the court issued its order within 30 days. Contrary to Mother's assertion, nothing in Rule 72 *required* the court to hold an evidentiary hearing or to make further findings, and we see no reason to judicially impose such requirements. *See generally Hart v. Hart*, 220 Ariz. 183, 187, ¶¶ 16-17 (App. 2009) (recognizing current A.R.S. § 25-411(J) contains "no requirement, as there is in A.R.S. § 25-403(B), that findings be reduced to writing or stated on the record"). On this record, the family court did not abuse its discretion in deciding not to set oral argument, hold an evidentiary hearing, or make further findings, and the court's adoption of the Master's May 2016 Report as a temporary order of the court was not an improper abdication of its responsibilities. The court had the authority to adopt the May 2016 Report, including the recommended deletion of Recommendation B going forward, and we find no error in its decision to do so.

### III.        Attorneys' Fees and Costs on Appeal

¶13        Both parties request an award of attorneys' fees on appeal pursuant to A.R.S. § 25-324 (2017). The record indicates that both Mother and Father have substantial financial resources, and any relative disparity

is not meaningful.[12]  Further, Father's position throughout the proceedings has been reasonable.  Accordingly, we deny Mother's request for an award of attorneys' fees on appeal.  Mother's appeal, however, relies on a strained legal analysis and, even if she were successful, would not likely benefit her or the child. *See supra* note 8.  Moreover, in seeking attorneys' fees, Mother argues in her opening brief that "Father has maintained an unreasonable position, having never raised any response or argument in response to Mother's Objections or Motion to Modify, having made no suggestion that the deletion of Recommendation B was in the best interest of the Minor Child, and then refusing to reinstate Recommendation B, despite the lack of any substantive opposition to retaining Recommendation B."  Mother's argument implies that Father's lack of a response in superior court means Father agrees with Mother as to the merits of the appeal, but has nonetheless forced Mother to appeal an undisputed issue.  As Father states and Mother does not dispute and failed to tell this court, however, the superior court in each instance ruled before Father's responses were due.  Accordingly, Mother's argument for an award of attorneys' fees relies primarily on a misrepresentation by omission.  Given the above, we conclude Mother's positions have been unreasonable and support an award of fees to Father.  We therefore grant Father's request for an award of attorneys' fees on appeal, subject to his compliance with Arizona Rule of Civil Appellate Procedure ("ARCAP") 21.  As the successful party on appeal, Father is also entitled to an award of his taxable costs upon compliance with ARCAP 21.

**CONCLUSION**

¶14      The family court's orders are affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA

---

[12]      In our discretion, we deny Father's motion to strike the Form 8-K, attached as Appendix 1 to Mother's opening brief, and have considered Appendix 1 for the limited purpose of evaluating the parties' requests for attorneys' fees.