IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

RONNIE ANTHONY MCDANIEL, CONSERVATOR OF THE ESTATE OF DALLAS
R. HAUGHT; AND ROY G. HAUGHT AND MARIE HAUGHT, NATURAL
PARENTS OF DALLAS R. HAUGHT,
*Plaintiffs/Appellants/Cross-Appellees*,

*v.*

PAYSON HEALTHCARE MANAGEMENT, INC., AN ARIZONA CORPORATION,
DBA PAYSON REGIONAL BONE & JOINT; 4C MEDICAL GROUP, P.L.C., AN
ARIZONA CORPORATION; AND AMAR PARKASH SHARMA, M.D.,
*Defendants/Appellees/Cross-Appellants*.

No. CV-20-0333-PR
Filed July 8, 2022

Appeal from the Superior Court in Gila County
The Honorable Bryan B. Chambers, Judge
No. P0400CV201300157
**AFFIRMED IN PART; REMANDED**

Opinion of the Court of Appeals, Division Two
250 Ariz. 199 (App. 2020)
**VACATED IN PART**

COUNSEL:

Arthur E. Lloyd (argued), A. Evan Lloyd, Lloyd Law Group of Arizona,
P.L.L.C., Payson; Thomas P. McGovern, McGovern Law Offices, Phoenix;
and Stanley G. Feldman, Timothy P. Stackhouse, Miller, Pitt, Feldman &
McAnally, P.C., Tucson, Attorneys for Ronnie Anthony McDaniel, Estate of
Dallas R. Haught, Roy G. Haught, and Marie Haught

Kari B. Zangerle, Mary G. Isban (argued), Campbell, Yost, Clare & Norell, P.C., Phoenix, Attorneys for Payson Healthcare Management, Inc., dba Payson Regional Bone & Joint

J. Arthur Eaves (argued), Brianna M. Jagelski, Sanders & Parks, P.C., Phoenix; and Eileen Dennis GilBride, Jones, Skelton & Hochuli P.L.C., Phoenix, Attorneys for 4C Medical Group, P.L.C. and Amar Parkash Sharma, M.D.

Barry D. Halpern, Ian R. Joyce, Snell & Wilmer L.L.P., Phoenix, Attorneys for Amici Curiae Arizona Medical Association and American Medical Association

David L. Abney, Ahwatukee Legal Office, P.C., Phoenix, Attorney for Amicus Curiae Arizona Association for Justice/Arizona Trial Lawyers Association

───────────

JUSTICE MONTGOMERY authored the opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, and JUSTICES BOLICK, LOPEZ, BEENE, and KING joined.

───────────

JUSTICE MONTGOMERY, opinion of the Court:

**¶1** To prove negligence in a medical malpractice case, expert testimony is generally required to establish the separate issues of the applicable standard of care and that the failure to meet it caused harm. *See* A.R.S. § 12-563; *Sampson v. Surgery Ctr. of Peoria, LLC*, 251 Ariz. 308, 311 ¶¶ 13, 16 (2021). The number of retained or specially employed experts that plaintiffs and defendants may call to testify concerning each issue is addressed by Arizona Rule of Civil Procedure 26(b)(4)(F)(i). Specifically, Rule 26(b)(4)(F)(i) allows each side in a case to presumptively call only one retained or specially employed expert to testify on an issue—hence, the rule is more commonly known as the "One-Expert Rule."

**¶2** In this case, we consider whether defendants who present testimony by treating physicians on the standard of care they provided, in addition to the testimony of a retained or specially employed expert on the standard of care issue, violate the One-Expert Rule. We also consider

whether a treating physician who was dismissed from the case on summary judgment is an indispensable party to a cross-appeal challenging the denial of a motion to designate him a nonparty at fault.

¶3　　　　We hold that defendants do not violate the One-Expert Rule when offering the testimony of a treating physician on the standard of care, in addition to that of a retained or specially employed expert, when the testimony is based on the treating physician's observations and personal participation in providing treatment to the plaintiff. Also, we hold that a treating physician dismissed on summary judgment is not an indispensable party to an appeal of the denial of a motion to name him a nonparty at fault.

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶4　　　　On July 17, 2011, Dallas Haught cut his knee in a dirt-bike accident. He went to Payson Regional Medical Center (Payson Regional), where Dr. Darnell, a surgeon affiliated with defendant Payson Healthcare Management (PHM), provided initial treatment. After Haught's knee injury worsened, he returned to Payson Regional on July 18 and again on July 19. On July 19, Dr. Darnell ordered a series of tests, including one to measure Haught's C-Reactive Protein (CRP) level, a marker for infection that measures inflammation. Dr. Darnell incorrectly recorded the CRP test result in Haught's records, reflecting a reading of 45 instead of 138.79 mg/dl.

¶5　　　　Because Haught's condition continued to worsen, Dr. Darnell arranged for his transfer later that same day to Scottsdale Shea Medical Center. Dr. Sharma, an employee of 4C Medical Group (collectively "4CMG") in Scottsdale, saw Haught on his arrival and prepared an initial report that omitted the CRP result. Over the course of Haught's stay, Drs. Burge, Cory, Friedman, Schaub, and Sharma participated in treating his injury. No one ordered another CRP test.

¶6　　　　At some point, Haught developed necrotizing fasciitis, resulting in the surgical removal of all the skin on his right leg. Through his conservator, Ronnie McDaniel, Haught subsequently sued several healthcare providers, including PHM, Dr. Cory, and 4CMG for medical negligence. He alleged that the failure to accurately communicate the CRP test result delayed the diagnosis of necrotizing fasciitis and caused the need for greater surgical intervention leading to permanent injuries and

disfigurement.

¶7        Before trial, Dr. Cory moved for summary judgment "due to [Haught's] failure to show that any alleged breach of the standard of care by [him] caused and or contributed to any of Dallas Haught's actual injuries." Neither Haught nor any other party opposed the motion and the trial court granted it, entering judgment in favor of Dr. Cory. PHM thereafter requested the trial court withdraw the order granting summary judgment in favor of Dr. Cory and filed a motion to name him a nonparty at fault.[1] The trial court denied the withdrawal motion as untimely and denied the motion to name Dr. Cory a nonparty at fault without explanation. Thereafter, PHM sought special action review of the trial court's ruling on the motion for summary judgment. The court of appeals declined jurisdiction.

¶8        At trial, defendants PHM and 4CMG called Drs. Berge, Cory, Friedman, and Schaub to testify and made clear at the outset of their testimony that each was not a "paid expert." Defendants' disclosure statements indicated that each of them would testify as a treating physician. Specifically, Drs. Berge and Cory would testify "consistent[] with the medical records," their depositions, and their recollection, and about their "care and treatment" of Haught, "including [their] personal observations of and interactions with him." Drs. Friedman and Schaub would likewise testify "consistent with the medical records and [their] recollection."

¶9        Haught argued throughout the trial that the defense elicited expert testimony from the treating physicians, thereby violating the One-Expert Rule. Specifically, Haught argued that by asking questions he characterized as hypothetical concerning the CRP result and infectious disease, the defendants elicited testimony that went beyond the treating physicians' personal knowledge of the care they provided, rendering them expert witnesses. Therefore, because the treating physicians testified to the same issues as the defendants' retained experts, the defendants presented

---

[1] A defendant may seek to name a nonparty at fault so that the jury may consider the nonparty with other defendants in apportioning fault for any or all of a plaintiff's injuries. *See* A.R.S. § 12-2506(B). Because damages are calculated based on the percentage of fault allocated to each defendant, any fault attributed to a nonparty can reduce a defendant's damages liability. *See* § 12-2506(A).

more experts than allowed.

¶10         After a sixteen-day trial, the jury returned a verdict for the defendants and the trial court entered judgment on their behalf. Haught moved for a new trial based on three issues: alleged juror misconduct; violation of the One-Expert Rule; and defense presentation of previously undisclosed expert opinions. The trial court denied the motion. The court concluded that how to diagnose necrotizing fasciitis and what to look for was "relevant" in the testimony of the treating physicians as "factual witnesses" and that the One-Expert Rule was not violated. With respect to undisclosed expert opinions, the court held that the "plaintiffs had plenty of opportunity to cross-examine those witnesses on that to reveal that this isn't what they said originally." And the court found there was no juror misconduct.

¶11         Haught appealed the defense judgment and the denial of his motion for a new trial. PHM cross-appealed the denial of its motion to name Dr. Cory a nonparty at fault.

¶12         With respect to Haught's claims, the court of appeals reversed the trial court and remanded for a new trial. *McDaniel v. Payson Healthcare Mgmt., Inc.*, 250 Ariz. 199, 203 ¶ 1 (App. 2020). In a de novo review, *id.* at 204 ¶ 8, the court held that the treating physicians' testimony addressing the CRP test was expert testimony related to the standard of care and violated the One-Expert Rule, *id.* at 206 ¶ 16. Additionally, the court held that the trial court should have excluded the undisclosed expert opinions presented by the defense. *Id.* at 208 ¶ 26. Because the court determined it was necessary to remand for a new trial, it did not address the alleged juror misconduct. *Id.* ¶ 27. As for PHM's cross-appeal, the court concluded that Dr. Cory was an indispensable party, and that, because PHM had not notified him of the cross-appeal, the court lacked jurisdiction and dismissed it. *Id.* at 210 ¶ 35.

¶13         We granted review to address whether the court of appeals erred in using a de novo standard of review concerning the One-Expert Rule and in concluding that the presentation of the treating physicians' testimony on the standard of care violated that rule, and whether the court also erred in determining that it lacked jurisdiction to consider PHM's cross-appeal due to the failure to include Dr. Cory. These are recurring issues of statewide importance. We have jurisdiction pursuant to article 6,

section 5(3), of the Arizona Constitution.

## II. ONE-EXPERT RULE

### A. Standard of Review

**¶14**　　　　As an initial matter, the parties contest whether the applicable standard of review is abuse of discretion or de novo. 4CMG and PHM argue that determining whether a treating physician testified as a fact or expert witness is a threshold matter subject to an abuse-of-discretion standard. Haught argues that because this matter involves the interpretation of the Rules of Civil Procedure, our review is de novo. Both parties are correct. Whether the defendants violated the One-Expert Rule is a mixed question of law and fact. In such a case, "we defer to the trial court's factual findings but review de novo all legal conclusions." *Helvetica Servicing, Inc. v. Pasquan*, 249 Ariz. 349, 352 ¶ 10 (2020).

### B.  Analysis and Application

**¶15**　　　　Haught argues that by answering hypothetical questions about CRP test results and the potential impact on his treatment, the treating physicians testified as experts, which violated the One-Expert Rule. 4CMG, joined by PHM, argues that the treating physicians' testimony contained only factual, treatment-related testimony.

**¶16**　　　　"We interpret court rules according to the principles of statutory construction." *Phillips v. O'Neil*, 243 Ariz. 299, 301 ¶ 8 (2017) (quoting *State v. Aguilar*, 209 Ariz. 40, 47 ¶ 23 (2004)). "The primary goal in interpreting a rule is to give effect to the intent of the rule-makers." *Chronis v. Steinle*, 220 Ariz. 559, 560 ¶ 6 (2009).

**¶17**　　　　At its inception in 1991, the One-Expert Rule read:

> Each side shall presumptively be entitled to only one *independent expert* on an issue. Where there are multiple parties on a side and the parties cannot agree as to which independent expert will be called on an issue, the court shall designate the independent expert to be called or, upon the showing of good cause, may allow more than one

6

independent expert to be called.

Ariz. R. Civ. P. 26(b)(4)(D) (1991) (emphasis added).

**¶18**　　　　The court of appeals addressed the term "independent expert" in 2014 in *Felipe v. Theme Tech Corp.*, 235 Ariz. 520, 526 ¶ 19 (App. 2014). The court found the word "independent" ambiguous, because it could refer to someone who was "not paid by one side or the other to form his opinions and testify about them," *id.* at 525 ¶ 17, or it "could mean a retained expert who is independent of any party prior to retention," *id.* at 526 ¶ 19. Relying on the 1991 committee comment that stated "[t]he words 'independent expert' in this rule refer to a person who will offer opinion evidence [and] who is retained for testimonial purposes," *id.* at 525 ¶ 17, the court defined an independent expert as "a person who is retained for the purpose of offering expert opinion testimony," *id.* at 526 ¶ 19.

**¶19**　　　　Substantive and organizational changes made to Rule 26(b)(4)(D) in 2016 incorporated *Felipe*'s definition. Rule 26(b)(4)(D) (2016). In 2018, the Rule was redesignated as Rule 26(b)(4)(F)(i) and (ii). Order No. R-18-0007 (2018). The One-Expert Rule currently reads:

> Generally. Unless the parties agree or the court orders otherwise for good cause, each side is presumptively entitled to call only one *retained or specially employed* expert to testify on an issue. When there are multiple parties on a side and those parties cannot agree on which expert to call on an issue, the court may designate the expert to be called or, for good cause, allow more than one expert to be called.

Rule 26(b)(4)(F)(i) (emphasis added).

**¶20**　　　　Despite the various amendments to the One-Expert Rule, the 1991 committee comment continues to inform the application of the Rule. *Cf. State v. Whitman*, 234 Ariz. 565, 567 ¶ 9 (2014) (providing that comments to rules inform our interpretation). Importantly for our analysis, in addition to clarifying who is an independent expert, the 1991 committee comment also made clear that an independent expert "is not a witness to the facts giving rise to the action." Rule 26(b)(4), cmt. to 1991 amendment. Additionally, the committee comment stated that "[t]here is no intent to preclude witnesses who in addition to their opinion testimony are factual

witnesses." *Id.* Taken together, these two points clarify that a fact witness may also offer expert opinion testimony without violating the One-Expert Rule when the witness' testimony is based on *personal* observations and actions.[2] Therefore, the dispositive inquiry is whether the treating physicians testified based on their observations and actions in treating Haught, regardless of whether in explaining their treatment decisions they also offered opinions about the standard of care.

**¶21** Drs. Berge, Cory, Friedman, and Schaub were specifically disclosed as treating physicians who would testify to facts arising from their treatment of Haught, *see supra* ¶ 8, and the trial court found they testified as fact witnesses. As for specific testimony concerning the CRP test and its result in the context of Haught's necrotizing fasciitis, the trial court concluded that it was relevant to their testimony as fact witnesses. We agree. To the extent the treating physicians were asked questions concerning the CRP test and its result, their answers were clearly in the context of explaining the treatment they personally provided and did not constitute impermissible expert testimony. *See In re Commitment of Frankovitch*, 211 Ariz. 370, 374 ¶¶ 11–12 (App. 2005) (finding no violation of former version of One-Expert Rule where psychiatrist performing a psychological examination was "more akin to a 'witness to the facts giving rise to the action' than to an expert 'retained for testimonial purposes'" (quoting Rule 26(b)(4) cmt. to 1991 amendment)); *Ariz. Dep't of Revenue v. Superior Court*, 189 Ariz. 49, 53 (App. 1997) (finding no violation of former version of One-Expert Rule where employee's "opinion as to valuation was formed in the course and scope of his regular duties as an appraiser and not in anticipation of testifying at trial"); *see generally Stafford v. Burns*, 241 Ariz. 474, 481–82 ¶¶ 25–27 (App. 2017) (concluding that alleged hypothetical questions concerning methadone ingestion and overdose "provided both an illustration of the extent of [defendant treating physician's] knowledge of the relevant area of medical practice and the basis for [her] opinion that she did not violate the standard of care").

---

[2] Nonetheless, if a treating physician will offer expert opinion testimony, the defense must comply with specific discovery and disclosure obligations pursuant to Arizona Rules of Civil Procedure 26(b)(4) and 26.1, respectively. *See also Solimeno v. Yonan*, 224 Ariz. 74, 76 ¶ 1 (App. 2010) (stating that "a medical malpractice defendant who also testifies as a standard of care expert is subject to expert disclosure requirements regarding that issue").

**¶22**　　　　Because the treating physicians' testimony concerning the standard of care, including their expert opinions, was based on personal observations and personal participation in Haught's treatment, the defendants did not violate the One-Expert Rule in presenting their testimony, even if the defense also presented standard-of-care testimony from another retained expert.  The trial court correctly declined to find a violation of the One-Expert Rule.[3]

## C.  Cumulative Testimony

**¶23**　　　　Haught warns that permitting treating physicians to testify as they did in this case will permit medical malpractice defendants to overwhelm jurors with a "deluge" of expert opinions and present cumulative testimony on an issue.  The defense would then be able to argue—as it did here—that thirteen doctors testified that the standard of care was met as compared to just one expert presenting the countervailing conclusion for the plaintiff.  Haught misapprehends the primary purpose of the One-Expert Rule, which is to limit the cost of the presentation of multiple retained experts.  *See* Rule 26(b)(4) cmt. to 1991 amendment (stating that the purpose "is to avoid unnecessary costs inherent in the retention of multiple independent expert witnesses").  It is Arizona Rule of Evidence 403 that directly governs instances of multiple experts presenting cumulative evidence.

**¶24**　　　　Rule 403 explicitly permits a trial court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . needlessly presenting cumulative evidence."  And, in the instance of retained and non-retained experts offering the same opinion evidence, "[a] trial court certainly has the discretion to prevent the presentation of 'cumulative evidence.'"  *Felipe*, 235 Ariz. at 526 ¶ 21 (quoting Rule 403).  Consequently, a court may preclude expert testimony if it "augments or tends to establish a point already proved by other evidence" whether it comes from a treating physician or a retained expert.  *Id.* ¶ 22 (quoting *State v. Kennedy*, 122 Ariz. 22, 26 (App. 1979)).

---

[3] Given that the treating physicians here are not defendants in this lawsuit, we need not address the parties' arguments concerning the meaning of Rule 26(b)(4)(F)(ii), which applies to defendants in medical malpractice actions.

¶25        With respect to being outnumbered, we note that the limitation of one expert per side on an issue is a presumption subject to modification by the parties or by a court's "order[] otherwise for good cause." Rule 26(b)(4)(F)(i). We also observe that the 1991 committee comment further provided that "[w]here an issue cuts across several professional disciplines, the court should be liberal in allowing expansion of the limitation upon experts established in the rule." Rule 26(b)(4) cmt. to 1991 amendment. Thus, a plaintiff may be entitled to additional experts under appropriate circumstances to fairly meet a "deluge" of defense expert witnesses.

## III. PHM'S CROSS-APPEAL

### A. Jurisdiction

¶26        The court of appeals concluded it did not have jurisdiction to consider PHM's cross-appeal because Dr. Cory was an indispensable party and did not receive notice. *McDaniel*, 250 Ariz. at 210 ¶ 35. The court reasoned that for PHM to successfully challenge the trial court's denial of its motion to name Dr. Cory a nonparty at fault, the court would have to vacate the order entering summary judgment that dismissed him from the case. *Id.* ¶ 33. Therefore, Dr. Cory "had an interest in opposing PHM's [petition] to review the [trial] court's denial and underlying summary judgment ruling on appeal . . . and failing to permit [Dr.] Cory to be heard on the matter would prejudice him." *Id.* ¶ 34.

¶27        PHM argues that the cross-appeal could be decided without considering the trial court's summary judgment order because § 12-2506(B) provides that the "[a]ssessment of fault against nonparties does not subject any nonparty to liability in this or any other action, and it may not be introduced as evidence of liability in any action." Therefore, if the trial court erred in denying the motion, Dr. Cory cannot be subject to any liability and no review of the order granting him summary judgment is necessary. Thus, he does not have an interest in the resolution of whether the trial court improperly denied PHM's motion.

¶28        Haught argues that overturning the trial court's denial of PHM's motion to name Dr. Cory a nonparty at fault necessarily requires vacating the summary judgment order. This is because the trial court determined, in granting the motion for summary judgment, that Dr. Cory

was *not* at fault for Haught's injuries. PHM's cross-appeal therefore implicates a substantial right of Dr. Cory, rendering him an indispensable party and leaving the court of appeals without jurisdiction.

**¶29** A cross-appeal may be dismissed for lack of jurisdiction when a cross-appellant fails to include an indispensable party. *See Burrows v. Taylor*, 129 Ariz. 212, 213 (App. 1981). An indispensable party is one who "has an interest in opposing the object sought to be accomplished by the appeal." *Marriott Corp. v. Indus. Comm'n*, 147 Ariz. 116, 118 (1985) (quoting *Dunn v. Law Offs. of Ramon R. Alvarez*, 119 Ariz. 437, 440 (App. 1978)).

**¶30** As noted above, § 12-2506(B) precludes liability for a nonparty and no assessment of fault may be used as evidence "in any action." Thus, even if the court of appeals had vacated the trial court's ruling on PHM's motion and permitted Dr. Cory to be named a nonparty at fault, he cannot be subject to liability as a matter of law. Therefore, absent any risk of liability, Dr. Cory could have no interest in and no reason to oppose PHM's cross-appeal and was not an indispensable party. The court of appeals therefore erred in concluding it did not have jurisdiction over PHM's cross-appeal.

## B. Nonparty at Fault

**¶31** Because the parties have fully briefed and argued the cross-appeal, we exercise our discretion to decide in the first instance whether the trial court erred by denying PHM's motion to name Dr. Cory a nonparty at fault. *See generally Lewis v. N.J. Riebe Enters., Inc.*, 170 Ariz. 384, 394 (1992) (deciding issues not addressed by the court of appeals "[i]n the interest of judicial economy"); *Schwab v. Matley*, 164 Ariz. 421, 422 n.2 (1990) (noting that "[p]rinciples of judicial economy" supported deciding an issue that had been briefed and argued). We review the trial court's ruling for an abuse of discretion, *Bowen Prods., Inc. v. French*, 231 Ariz. 424, 427 ¶ 9 (App. 2013), and will uphold it if there is "any reasonable evidence in the record to sustain it," *State v. Morris*, 215 Ariz. 324, 341 ¶ 77 (2007) (quoting *State v. Veatch*, 132 Ariz. 394, 396 (1982)).

**¶32** PHM argued in its motion to the trial court that because Haught did not oppose Dr. Cory's motion for summary judgment, Haught voluntarily dismissed Dr. Cory. PHM therefore cited *LyphoMed, Inc. v. Superior Court*, 172 Ariz. 423, 427 (App. 1992), for the proposition that

11

"[w]here a plaintiff dismisses a claim against a defendant, having entered into a settlement agreement with that defendant, the trier-of-fact may apportion the fault of that defendant regardless of whether another defendant has given notice of non-party at fault." PHM concluded its motion by requesting an order pursuant to § 12-2506(B) to name Dr. Cory a nonparty at fault.

¶33 Section 12-2506(B) specifies that "[n]egligence or fault of a nonparty may be considered *if the plaintiff entered into a settlement agreement with the nonparty . . . .*" (Emphasis added.) But there is no evidence of a settlement agreement between Haught and Dr. Cory in the record, or of Haught voluntarily dismissing him. *See* Ariz. R. Civ. P. 41(a) (permitting a plaintiff to voluntarily dismiss a claim against a defendant under specified circumstances by filing a notice of dismissal or by order of the court). Dr. Cory's dismissal from the case was the result of the trial court entering an order granting his motion for summary judgment "as to all claims against" him and entering judgment against Haught.

¶34 Even more of a problem for PHM's argument is that a trial court may only instruct a jury about a nonparty's comparative fault "if evidence offered at trial is adequate to support the jury finding that the nonparty was negligent." *Ryan v. S.F. Peaks Trucking Co.*, 228 Ariz. 42, 48 ¶ 22 (App. 2011) (quoting *A Tumbling-T Ranches v. Flood Control Dist. of Maricopa Cnty.*, 222 Ariz. 515, 540 ¶ 83 (App. 2009)). However, the trial court entered an order granting summary judgment for Dr. Cory on the basis that he could not have caused any of Haught's injuries. *See supra* ¶ 7; *see also Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990) (discussing the purpose of a motion for summary judgment and noting its use when "there is no issue of fact and . . . the movant is entitled to judgment as a matter of law"). Thus, there was no evidence that could have supported a finding that Dr. Cory, whether as a named defendant or a nonparty at fault, was negligent. *See Ryan*, 228 Ariz. at 48 ¶ 22 (stating that a defendant "must prove the nonparty is actually at fault").

¶35 Because there were no grounds to allow PHM to name Dr. Cory a nonparty at fault under § 12-2506(B), nor any basis upon which the court could have instructed a jury to determine any fault on his part, the trial court did not err in denying PHM's motion to name Dr. Cory a nonparty at fault.

## IV. DISPOSITION

¶36 While our resolution of the issues concerning the One-Expert Rule and a nonparty at fault would otherwise result in a reinstatement of the defense verdict, the court of appeals' resolution of the undisclosed expert opinions issue, for which we did not grant review, raises the question of whether this case should still be remanded for a new trial. *See McDaniel*, 250 Ariz. at 208 ¶ 26. 4CMG asserted that the court's failure to expressly order remand as to undisclosed expert opinions establishes its intent not to do so. On the other hand, Haught noted the court referenced "reasons"—plural—for reversing the trial court and remanding for a new trial, thus demonstrating that the court's decision to remand rested on the undisclosed opinions issue in addition to the One-Expert Rule violation. *See id.* at 203 ¶ 1 (ordering "[f]or the following reasons . . . remand for a new trial").

¶37 Under Arizona Rule of Civil Procedure 37(c)(1), a party "may not use . . . at trial" information that was not timely disclosed. *See also Englert v. Carondelet Health Network*, 199 Ariz. 21, 25 ¶ 6 (App. 2000) (noting that a failure to timely disclose information concerning the expected testimony of an expert results in an inability "to use that information at trial absent specific extenuating circumstances"). And an "error in the admission or rejection of evidence" may serve as the basis for granting a new trial. Ariz. R. Civ. P. 59(a)(1)(F); *see also Englert*, 199 Ariz. at 25 ¶ 5 (asserting trial court's discretion to grant new trial when it makes an "error in admitting evidence that materially affects a party's rights"). Prejudicial evidentiary rulings may also provide grounds for a new trial. *See Kott v. City of Phoenix*, 158 Ariz. 415, 417–19 (1988) (remanding for new trial in case where opinion testimony not disclosed); *In re Conservatorship for Hardt*, 242 Ariz. 449, 451 ¶ 1 (App. 2017) (remanding for a new trial based on erroneous, prejudicial exclusion of testimony).

¶38 While the court of appeals did not explicitly order remand after analyzing the issue of undisclosed expert opinions, the court did expressly find that "both [4CMG] and PHM failed to disclose changes in the opinions of two experts." *McDaniel*, 250 Ariz. at 206 ¶ 17, 208 ¶ 25. These changes "prevented Haught from effectively preparing for" defense testimony. *Id.* at 208 ¶ 26. Because the new expert opinions were not disclosed before trial, the court concluded that "the trial court abused its discretion in permitting the undisclosed opinions into evidence." *Id.*

13

**¶39**          Given the court of appeals' analysis, by finding the trial court abused its discretion and that Haught suffered prejudice, the court established the basis for overturning the admission of the undisclosed opinions. *Id.* at 206–07 ¶ 17 ("We will not overturn a court's ruling admitting or excluding evidence absent prejudice."). Because this was a prejudicial admission of an undisclosed expert opinion, the court had a basis, independent of the violation of the One-Expert Rule, to remand the case for a new trial. *See Kott*, 158 Ariz. at 417–19 (remanding for new trial in case where opinion testimony not disclosed).

**¶40**          We therefore conclude that the "reasons" upon which the court of appeals remanded the matter for a new trial included the issue of the admission of the undisclosed expert opinions. Consequently, our determination that the defendants did not violate the One-Expert Rule does not obviate the need to remand for a new trial.

## V.  CONCLUSION

**¶41**          We vacate ¶¶ 7–16 and 29–35 of the court of appeals' opinion concerning the One-Expert Rule and PHM's cross-appeal. We affirm the trial court's ruling concerning the testimony of the treating physicians and its denial of PHM's motion to name Dr. Cory a nonparty at fault and remand for a new trial.